IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 19, 2016 Session

## DELWIN L. HUGGINS, ET AL. v. R. ELLSWORTH MCKEE, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 071061     Jon K. Blackwood, Senior Judge**

_____

**No. E2015-01942-COA-R3-CV**
**FILED-MAY 31, 2016**

_____

Appellant appeals the trial court's grant of summary judgment dismissing his claims against a limited liability corporation surrounding the sale of the corporation and the distribution of the proceeds to one member.  Although we reverse the trial court's ruling with regard to the application of Tennessee Code Annotated Section 48-237-101(d), we otherwise affirm the trial court's ruling granting summary judgment to the corporation on all claims asserted by Appellant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; and Affirmed in Part**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

John P. Konvalinka and Cody M. Roebuck, Chattanooga, Tennessee, for the appellant, John P. Konvalinka.

Anthony A. Jackson and Bruce C. Bailey, Chattanooga, Tennessee, for the appellee, Alternative Fuels, LLC.

## OPINION

### Background[1]

---

[1] Despite containing a separate statement of the case section, the statement of facts section of Appellant's brief recites the procedural history of this case, rather than the facts that gave rise to this

This is the third appeal arising from this case. In June 1995, Delwin Huggins formed Alternative Fuels, LLC ("AF" or "Alternative Fuels") to develop an alternative fuel source. From that time until 2003, Mr. Huggins was the Chief Manager of AF and allegedly had control of its books and records.

In June 1996, Ellsworth McKee made a $1,500,000.00 capital contribution in exchange for a 50% membership interest in AF. Subsequently, Mr. McKee acquired an additional 20% membership interest in AF. In 2002 and throughout the events at issue in this case, Mr. McKee had a membership interest of 70% of AF, and Mr. Huggins had a membership interest of 30%.

By April 2002, Mr. Huggins was attempting to liquidate AF. In late 2003, Mr. McKee assumed control of AF because of his belief that AF "was not operating and had no income." In that same year, Mr. McKee sold AF's assets to Cogeneration Technologies, Inc. ("Cogeneration"), for $60,000.00 and an equity interest in Cogeneration. Cogeneration never made a profit, and Mr. McKee contended that he did not receive any monies other than the $60,000.00 that Cogeneration paid for the AF assets. Mr. McKee retained all of the proceeds from the sale of AF's assets to Cogeneration. Cogeneration dissolved in 2009 with no assets and allegedly no further distributions to Mr. McKee.

On December 14, 2007, Mr. Huggins filed a complaint for damages and equitable relief against AF and Mr. McKee (together, "Defendants"). In his complaint, Mr. Huggins alleged that Mr. McKee effectively shut him out of AF resulting in his claimed damages. In February 2008, the Defendants filed an answer and McKee filed a counterclaim seeking at least $1,500,000.00 alleging that Mr. Huggins was incompetent and drove AF into the ground.

In 2009, Mr. Huggins filed for Chapter 7 bankruptcy protection. During the bankruptcy proceedings, John P. Konvalinka, as Trustee for an undisclosed principal, bought Mr. Huggins's interest in this lawsuit. Mr. Konvalinka ("Appellant") was joined as a plaintiff in this matter on August 5, 2010. On May 6, 2011, Mr. McKee filed a motion to amend his answer and counterclaim to assert a new and distinct claim for "setoff" against Appellant. On May 27, 2011, the trial court granted the motion.

On November 17, 2011, the bankruptcy court entered an order granting Mr. McKee's previously filed motion seeking approval of certain claims asserted by Mr. McKee against Mr. Huggins's bankruptcy estate. Then, on December 5, 2011, Appellees

litigation. Rule 27 of the Tennessee Rules of Appellate Procedure states that "the course of proceedings" should be included in the statement of the case section of an appellate brief, while the statement of facts section should include "the facts relevant to the issues presented."

filed a motion for judgment on the pleadings, asserting that, based on Mr. McKee's setoff claim and the November 2011 bankruptcy court order, Appellant's claims should be dismissed as a matter of law. Appellant responded on December 12, 2011. The trial court, on January 6, 2012, entered an order granting Appellees' motion and dismissing all of Appellant's claims. Appellant appealed.

In its Opinion filed November 28, 2012, this Court affirmed the trial court's order dismissing all of the claims against Mr. McKee based upon doctrine of set-off, but reversed the dismissal of Appellant's claims against AF. ***Huggins v. McKee***, 403 S.W.3d 781, 788 (Tenn. Ct. App. 2012) ("***Huggins I***"), *perm. app. denied* (Tenn. May 9, 2013).[2] As such, the only remaining count of the complaint in this matter was Count V, which provides:

> 33. As a result of [Mr.] McKee's misconduct described in this Complaint, [Mr.] Huggins seeks appropriate equitable relief from the Court pursuant to T.C.A. § 48-230-105 to rectify the wrongs committed by [Mr.] McKee and to compensate [Mr.] Huggins and AF for all losses suffered at the hands of [Mr.] McKee.
> 34. Just cause exists for compelling [Mr.] McKee and AF to provide a full accounting of all financial transactions and agreements involving AF and [Mr.] McKee (including the transactions/agreements with the City of Chattanooga and Cogeneration Technologies, LLC described herein) for all time periods when [Mr.] McKee has served as the Chief Manager of AF. In addition, the Court should appoint a receiver to take control of AF and proceed with marshaling all assets of the company and conducting an investigation into the wrongful financial dealings of [Mr.] McKee described in this Complaint. The Court should also award [Mr.] Huggins his attorney fees and litigation expenses incurred in bringing the present action.

---

[2] Specifically, the ***Huggins I*** Court held that because Appellant merely "stepped into [Mr.] Huggins's shoes," any defenses applicable to Mr. Huggins were also applicable to Appellant. ***Huggins I***, 403 S.W.3d at 787. Thus, Mr. McKee was entitled to assert a claim for set-off against Appellant, showing that McKee's proof of claim against Mr. Huggins of over $24,000,000.00, as accepted by the bankruptcy court, was far greater than Appellant's actual or punitive damages. As such, any damages that were allegedly owed to Appellant, standing in the shoes of Mr. Huggins, were completely subsumed by the damages Mr. Huggins owed to Mr. McKee that were set-off by the bankruptcy court. ***Id.*** at 788. The ***Huggins I*** Court, however, held that Appellant could pursue claims directly against AF pursuant to Tennessee Code Annotated Section 48-230-105, discussed in detail, *infra*.

- 3 -

On remand, on February 28, 2014, AF filed a motion to dismiss Appellant's claims, arguing that they were moot. The trial court granted the motion on April 2, 2014, dismissing Appellant's claims in their entirety. Appellant appealed, and this Court reversed based upon the trial court's failure to explain the basis for the dismissal. ***Huggins v. McKee***, No. E2014-00726-COA-R3-CV, 2015 WL 866437 (Tenn. Ct. App. Feb. 27, 2015) ("***Huggins II***").

On the second remand, AF filed a motion for summary judgment, accompanied by a memorandum of law, a statement of undisputed material facts, and over twenty exhibits. AF asked the trial court to rule that Appellant's claims for an accounting and a receivership against AF were moot, that the $60,000.00 distribution to Mr. McKee was lawful, and that any claims against Mr. McKee were time-barred.

The trial court heard arguments on the motion for summary judgment on August 26, 2015. The trial court entered its written order on September 29, 2015, granting the motion for three reasons. First, the trial court ruled that the case against AF was moot because the trial court could not afford any practical relief and ordering an accounting or appointing a receiver would be futile because Mr. Huggins had access to all of AF's books and records. Second, the trial court found that AF's actions in selling its remaining assets and distributing the $60,000.00 in proceeds from the sale to Mr. McKee were lawful. Last, the trial court found that any action to recover the distribution was time-barred. Appellant appealed. The sole appellee is AF.

## Issues Presented

Appellant raises four issues, which are taken from his brief, and reordered by this Court:

1. Whether, in ruling on AF's motion for summary judgment, the trial court erred in adopting AF's proposed findings of fact and conclusions of law?
2. Whether the trial court erred in ruling that a $60,000.00 distribution to Mr. McKee complied with AF's operating agreement and Tennessee law?
3. Whether the trial court erred in ruling that Appellant's claims against AF are time-barred by Tennessee Code Annotated Section 48-249-307 and/or 48-237-101(d)?
4. Whether the trial court erred in ruling that certain claims made by Appellant against AF were moot?

## Standard of Review

This case was determined on the basis of summary judgment. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. Our Supreme Court in *Rye v. Women's Care Center of Memphis, MPLLC* recently explained the burden-shifting analysis to be employed by courts tasked with deciding a motion for summary judgment:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264–65 (Tenn. 2015) (judicially adopting a summary judgment parallel to the statutory version contained in Tenn. Code Ann. § 20-16-101); *see also* Tenn. Code Ann. § 20-16-101 (applying to cases filed after July 1, 2011).

Additionally, on appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford*

*Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## Discussion

## I.

Appellant first argues that the trial court erred in entering an order granting summary judgment to AF without expressing its independent legal reasoning, in violation of the Tennessee Supreme Court's ruling in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014). In *Smith*, the trial court directed the appellee to draft an order granting summary judgment in its favor without providing the parties with any legal reasoning for the grant of summary judgment. Thus, the trial court expressly directed appellees to draft their own "rationale for the [c]ourt's ruling." *Id.* at 311. The Supreme Court took issue with this practice, ruling that it violated Tennessee Rule of Civil Procedure 56.04's directive that trial courts enter written orders that provide the "legal grounds upon which the court denies or grants the motion."

In support of its holding, the Tennessee Supreme Court noted that the United States Supreme Court, applying a similar summary judgment standard, had previously criticized the verbatim adoption of counsel-prepared orders by federal trial courts, but did not specifically hold that the practice was reversible error in all situations. *Id.* at 314–15 (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572, 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985)). As the *Smith* Court explained:

> A trial court's verbatim adoption of verbiage submitted by the prevailing party detracts from the appearance of a hardworking, independent judge and does little to enhance the reputation of the judiciary. At the very least, it gives rise to the impression that the trial judge either has not considered the losing party's arguments, or has done little more than choose between two provided options rather than fashioning a considered, independent ruling based on the evidence, the filings, argument of counsel, and applicable legal principles. At worst, it risks creating an appearance of bias or the impression that the trial court ceded its decision-making responsibility to one of the parties.

*Smith*, 439 S.W.3d at 315 (footnotes omitted). Thus, while the Tennessee Supreme Court held that there are "acceptable reasons for permitting trial courts to request the preparation of proposed findings of fact, conclusions of law, and orders," the trial court's judgment must nevertheless be a product of the trial court's independent judgment. *Id.* at 317–18.

Here, there is no dispute that at the conclusion of the summary judgment hearing, the trial court did not make an oral ruling, but instead took the matter under advisement. On or about September 1, 2015, AF filed proposed findings of fact and conclusions of law in the trial court. Appellant filed its own proposed order on September 14, 2015. On September 16, 2015, the trial court sent an e-mail to counsel for AF asking that counsel "draw an order granting [AF] summary judgement [sic] and incorporating [AF's] findings and conclusions[.]" Based upon this series of events, Appellant contends that there is no basis in the record for concluding that the order granting summary judgment is the product of the trial court's own independent legal reasoning and judgment. Thus, Appellant contends that the trial court's order should be reversed.

We agree that the trial court's practice in this case is not fully compliant with either the letter or the spirit of *Smith*. To be sure, the better practice would have been for the trial court to either make an oral ruling or to draft its own order rather than adopting verbatim the proposed findings and conclusions of AF. We also realize, however, that this case has been awaiting resolution for nearly a decade and was previously remanded to the trial court because the trial court failed to offer an appropriate basis for its prior dismissal. As the *Smith* Court explained, "judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 [i.e., "conduct[ing] archeological digs" to discern the basis for the trial court's judgment] in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision." *Id.* at 314. Additionally, under similar circumstances, this Court has held that in the absence of evidence to the contrary, this Court will "assume that the order approved and entered by the trial court accurately represents the court's reasoning." *In re Estate of Kysor*, No. E2014-02143-COA-R3-CV, 2015 WL 9465332, at *6 (Tenn. Ct. App. Dec. 28, 2015) (citing only pre-*Smith* cases to support this ruling). In the interest of providing the parties to this case a final resolution of the issues, we exercise our discretion to proceed to consider the merits of this appeal, but we caution litigants and trial courts that we may not choose to do so under similar circumstances in the future.

## II.

Appellant next asserts that the trial court erred in concluding that the statute of limitations contained in Tennessee Code Annotated Section 48-237-101(d) applies to this case. Section 48-237-101(d) provides:

Unless otherwise agreed, a member who receives a distribution from an LLC or a manager or governor who votes for or assents to such distribution shall have no liability under this section or other applicable law for the amount of the distribution after the expiration of three (3) years from the date of the distribution.

Appellant insists, however, that the above statute of limitations is inapplicable in the present action because Count V of his complaint, the only Count remaining, seeks only redress from AF, rather than Mr. McKee. Indeed, in *Huggins I*, this Court dismissed all claims pending against Mr. McKee. *See Huggins I*, 403 S.W.3d at 788 ("[T]he Trial Court did not err in dismissing [Appellant's] claims against [Mr.] McKee."). Thus, there can be no dispute that Appellant is not entitled to seek any damages from Mr. McKee with regard to the distribution of the proceeds from the sale of AF's assets to Cogeneration. As such, we agree with Appellant that the Section 48-237-101(d) statute of limitations is inapplicable in the present case. Consequently, we reverse the trial court on this issue.

## III.

We next consider whether the trial court erred in ruling that the $60,000.00 distribution to Mr. McKee after the sale of AF to Cogeneration was lawful based upon the undisputed facts in the record. To determine this issue, we must first determine whether there are any disputed material facts exist that would render summary judgment inappropriate. Accordingly, we first consider the relevant facts contained in Mr. McKee's statement of undisputed material facts:

1. In June of 1996, Mr. McKee made a capital contribution in the amount of $1,500,000 for a 50% interest in [AF].
2. In 1997, Mr. McKee acquired an additional 20% interest in [AF] from [Appellant] and Phil Martin increasing his ownership interest in [AF] to 70%.
3. Mr. Huggins has held an ownership interest in [AF] since its formation in 1995; in 2002, Mr. Huggins increased his ownership interest in the company to 30%.
4. On December 5, 2003, Mr. McKee negotiated with Michael McCullough, the owner of Cogeneration Technologies LLC ("Cogeneration"), and sold the [AF's] assets to Cogeneration for $60,000 plus a 49% interest in Cogeneration.

5. Cogeneration did not pay Mr. McKee any additional monies other than the $60,000 for the sale of the [AF's] assets.

Of these allegations, the only fact that Appellant disputes is the allegation that Mr. McKee received only $60,000.00 from the sale of AF to Cogeneration, contending that "AF's citation to the record do[es] not support the allegations that Mr. McKee did not receive any additional monies beyond the $60,000.00 for the sale of AF's assets." We cannot agree. To support its assertion that Mr. McKee received only $60,000.00 and an interest in Cogeneration from the sale of AF, AF cites the depositions of Mr. McKee, Mr. McCullough, and James Hand, Mr. McKee's accountant and eventual Secretary for AF. First, in his affidavit, Mr. McKee states that Cogeneration paid him $60,000.00 and granted him an interest in Cogeneration for the sale of AF's assets. According to Mr. McKee's affidavit, he "never received any additional monies from Cogeneration other than the $60,000.00 for the sale of [AF's] assets." In his deposition, Mr. McCullough likewise testified that he, through Cogeneration, made a one-time payment of $60,000.00 to Mr. McKee for AF's assets and indicated that there had been no other distributions to Mr. McKee beyond the $60,000.00. Finally, Mr. Hand testified that although Mr. McKee and Mr. McCullough initially intended that Mr. McKee would receive additional remuneration from the sale of AF's assets to Cogeneration, because Cogeneration ultimately failed, in the end, Mr. McKee only received $60,000.00 and a minority interest in Cogeneration from the sale. The minority interest was never valued, however, and never resulted in additional proceeds to Mr. McKee. Thus, three witnesses stated specifically and unequivocally that Mr. McKee received only $60,000.00 from the sale of AF's assets to Cogeneration. We note, however, that testimonial evidence is not the only evidence in the record that supports this conclusion—the record also contains a summary of Cogeneration's checks written from December 2003 to March 2006. This record shows that Cogeneration wrote only two checks to Mr. McKee during this time, for a total of $60,000.00. Consequently, the evidence cited by AF fully supports its allegation that the only money Mr. McKee received from the sale of AF's assets was $60,000.00.

Having submitted sufficient evidence that Mr. McKee only received $60,000.00 and an unvalued minority interest in Cogeneration as payment for the sale of AF's assets, it was therefore, Appellant's burden to show a dispute of material fact as to this issue. *See Yount v. FedEx Express*, --- S.W.3d ---, 2016 WL 1056958, at *3 (Tenn. Ct. App. Mar. 17, 2016) (citing *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014)). As the Tennessee Supreme Court somewhat recently stated, to survive summary judgment, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). Here, Appellant pointed to no evidence of any kind that either calls into question the fact that Mr. McKee received only $60,000.00 in cash for

the sale of AF's assets to Cogeneration or in any way disputes the specific testimony of Mr. McKee, Mr. McCullough, and Mr. Hand. Thus, we conclude that Appellant has failed to show a genuine dispute as to whether Mr. McKee received any monies other than the $60,000.00 payment from Cogeneration for the sale of AF's assets. We will, therefore, consider this fact as undisputed for purposes of appeal.

Appellant next argues that the trial court erred in finding that distribution of the $60,000.00 solely to Mr. McKee was "legal," as Appellant argues that such a distribution was contrary to AF's Operating Agreement. Tennessee law provides that "Any profits and losses of an LLC shall be allocated among the members and holders of financial rights in the manner provided in the LLC documents." Tenn. Code Ann. 48-249-304(a). Here, AF's Operating Agreement provides that "[t]he net profits . . . of [AF] shall be apportioned among the Members in their respective percentages . . . as set forth . . . on Schedule I." Furthermore, the Operating Agreement provides that in winding up the corporate business upon dissolution, any remaining company or property owned after the payment of various debts and expenses outlined in the Operating Agreement shall be distributed "on a pro rata basis . . . . in accordance with their Capital Accounts." Appellant argues that these provisions require that any amount that Mr. McKee received from the sale of AF's assets to Cogeneration must be made to the parties based upon their respective membership interests in AF, resulting in Appellant, in place of Mr. Huggins, receiving 30% of the proceeds from the sale.

AF argues, however, that the trial court correctly ruled that the distribution of the entire $60,000.00 in proceeds to Mr. McKee was appropriate under this Court's holding in *Owen v. Hutten*, No. M2012-02387-COA-R3-CV, 2013 WL 5459035 (Tenn. Ct. App. Sept. 27, 2013). In *Owen*, plaintiff and defendant formed a limited liability company. The plaintiff made the only capital contribution to the company, which capital was later used by the LLC to purchase real property. The plaintiff later filed a petition to dissolve the company and distribute its assets. The trial court dissolved the company and ordered that the proceeds would first be used to repay the plaintiff's capital contribution, then divided equally between the parties. The defendant appealed, arguing that the proceeds from the sale of the company's property should have been divided equally between the parties. *Id.* at *1.

This Court affirmed the decision of the trial court, noting that because no operating agreement provided "provisions to the contrary," Tennessee law presumes that "the members of an LLC will share equally in both profits and losses, . . . and also that they will equally share in any distributions." *Id.* at *5 (citing Tenn. Code Ann. § 48-249-304(b);[3] Tenn. Code Ann. § 48-249-305(b)).[4] Given the nature of the dissolution action at

---

[3] This statute provides: "If the LLC documents do not provide for allocations of profits and losses, profits and losses shall be allocated among the members and holders of financial rights in equal shares."

- 10 -

issue, the Court of Appeals held that the trial court had broad discretion over the distribution of the assets. *Owen*, 2013 WL 5459035, at *6 (citing Tenn. Code Ann. § 48-249-616). Based upon this narrow standard of review, the Court of Appeals ruled that in requiring that plaintiff be repaid her capital contribution first, "the trial court reached an equitable result that was just and reasonable, which was within its discretion under the controlling law, and which did not cause any injustice to [defendant]." *Owen*, 2013 WL 5459035, at *6. Based upon the holding in *Owen*, AF argues that it was equitable for the trial court to rule that Mr. McKee was entitled to the entire $60,000.00 as partial repayment for his capital contribution, given that Mr. McKee was the only member of AF to ever make any capital contribution.

In his brief to this Court, however, Appellant argues that the *Owen* decision in inapposite to the case-at-bar because it involved a company where only one party made a capital contribution. According to Appellant, unlike the parties in *Owen*, here he disputes that Mr. McKee was the only member of AF to ever make a capital contribution. In support of this allegation, Appellant cites to his own deposition testimony, in which he indicated that he, in fact, had made a capital contribution to AF. Appellant also cites AF's Operating Agreement, which states that "Each member has contributed the amount set forth in the attached Schedule 1 in exchange for an interest . . . in the Company."

Several facts militate against Appellant's claim that Mr. Huggins also made a capital contribution in AF. First, we note that despite the fact that the Operating Agreement indicates that "each Member" made a capital contribution in AF, the Schedule that purportedly shows Mr. Huggins's contribution contains no indication of the amount, if any, of Mr. Huggins's contribution.[5] Although this document also does not reference Mr. McKee's capital contribution, a Capital Contribution Agreement between AF and Mr. McKee is contained in the record that evidences Mr. McKee's undisputed $1,500,000.00 contribution. Furthermore, Mr. Huggins was able to offer no specific facts

---

[4] This statute provides: "If the LLC documents do not provide for the allocations of distributions, then distributions, including distributions on termination of the LLC, except as provided in § 48-249-620, shall be allocated among the members and holders of financial rights in equal shares."

[5] Schedule 1 states the following:

SCHEDULE 1 TO OPERATING AGREEMENT OF
ALTERNATIVE FUELS, LLC

| Member | Capital Contribution | Percentage | Votes |
|--------|---------------------|------------|-------|
| [Mr.] McKee | | 50% | 5 |
| [Mr.] Huggins | | 30% | 3 |
| Philip Martin | | 20% | 2 |

We note that there is no dispute that by the time the events in this case arose, Mr. McKee had a 70% membership interest in AF, while Mr. Huggins retained a 30% membership interest.

- 11 -

to support his claim that he made a capital contribution and has offered no documents to show such a financial transaction ever occurred. Indeed, Mr. Huggins's testimony concerning the issue provides:

> Q. Okay. At the time you formed [AF], what amount of money did you invest in this business?
> * * *
> THE WITNESS: I don't recall.
> * * *
> Q. Okay. Do you remember investing any money?
> A. Yes.
> Q. Okay. Do you have any documents to show what money you invested?
> A. I don't have any documents personally as it relates to this case. They have all been turned over to counsel.
> Q. So is the answer, no, you don't have any documents showing what you invested in this?
> * * *
> A. I don't know.
> Q. Do you have any idea what amount of money you invested?
> A. I don't recall what the amount was. I do recall that there was significant dollars invested, but I don't recall what it was.

In the Tennessee Supreme Court's Opinion in **Rye** v. **Women's Care Center of Memphis** discussed above, the **Rye** Court held that "[t]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" **Rye**, 477 S.W.3d at 265 (quoting **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" **Matsushita Elec. Indus. Co.**, 475 U.S. at 586, 106 S. Ct. 1356 (cited favorably in **Rye**); *see also* **McGinnis v. Cox**, 465 S.W.3d 157, 164 (Tenn. Ct. App. 2014), *appeal denied* (Feb. 12, 2015) ("Decisions of federal courts construing rules that are substantially similar to our own are 'highly persuasive.'").

We conclude that there is no genuine dispute regarding Mr. Huggins's capital contribution that requires this issue be submitted to the jury. Here, there is absolutely no documentary evidence in the record to show that Mr. Huggins in fact made a capital contribution to AF. Although Mr. Huggins asserted in his deposition that he contributed "significant" dollars to AF, he admitted that he had no documentation to support his assertion, nor did he provide any details to support his claim. The **Rye** Court was clear that when faced with a properly supported summary judgment motion, the non-moving party must come forward, at the summary judgment stage, with all available evidence to

show a dispute of fact. *See **Rye***, 477 S.W.3d at 265 (quoting Tenn. R. Civ. P. 56.06). Moreover, given that the founding of AF and any likely capital contributions would have taken place nearly twenty years ago, Appellant had approximately two decades from that time and nearly ten years of litigation to produce evidence on this issue. Thus, it is unlikely that Appellant will ever be able to support his claim that Mr. Huggins made a capital contribution to AF with anything other than Mr. Huggins's vague and unsubstantiated assertions.

Although involving a different issue, we also recognize that Mr. Huggins's capital contribution claim is not analogous to Mr. McKee's assertion that he received only $60,000.00 from the sale of AF's assets because Mr. Huggins's claim is supported solely by self-serving testimony, whereas Mr. McKee's claim, although initially proved via self-serving testimony, is further buttressed by additional witnesses' testimony and documentation in the record. Unlike Mr. McKee's assertion that he received only $60,000.00 in cash from the sale of AF's assets to Cogeneration, Appellant's claim that he made a significant capital contribution to AF is neither specific, nor supported by any additional evidence other than Mr. Huggins's own vague testimony. This Court has previously held that a physician's own "conclusory assertion" that he complied with the recognized standard of care may be insufficient to shift the summary judgment burden to the non-moving party. *See **Town of Crossville Hous. Auth. v. Murphy***, 465 S.W.3d 574, 582 (Tenn. Ct. App. 2014), *perm. app. denied* (Dec. 18, 2014). As such, we likewise view Mr. Huggins's own statement that he made a capital contribution as a mere conclusory assertion where it is not accompanied by any facts that could be used to support it or other substantiating evidence. *See **Miller v. Birdwell***, 327 S.W.3d 53, at 60–62 (Tenn. Ct. App. 2010) (holding that affidavits of two doctors in a health care liability case were sufficient to shift the burden because rather than making statements of compliance with the standard of care without explanation, they outlined the facts serving as the basis for their conclusion).

Taking the record as a whole, we cannot conclude that Mr. Huggins's bare assertion that he contributed to AF financially in an unknown, yet "significant" amount, does anything more than create metaphysical doubt as to this issue. Indeed, this Court has previously held even where an issue is "typically a question for the trier of fact, summary judgment is appropriate in those situations where reasonable minds" could reach only one conclusion. ***Green v. Roberts***, 398 S.W.3d 172, 179 (Tenn. Ct. App. 2012) (involving comparative fault) (citing ***Norris v. Pruitte***, No. 01A01-9709-CV-00506, 1998 WL 1988563, at *3 (Tenn. Ct. App. Aug. 24, 1998)). Under these circumstances, we conclude that the trial court did not err in relying on the fact that Mr. McKee made the sole capital contribution to AF in its decision to grant summary judgment.

Appellant next argues that regardless of whether Mr. Huggins made a capital contribution, the trial court was required to distribute the proceeds of the sale of AF

pursuant to the terms of AF's Operating Agreement, which Appellant asserts requires that distributions and profits be distributed pro rata based upon each member's ownership share in the company. To the extent that this question requires us to interpret a contract, our review is de novo with no presumption of correctness. *Pitt v. Tyree Org., Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Each provision must be construed in light of the entire agreement, and the language in each provision must be given its natural and ordinary meaning. *Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005). When interpreting a contract, the court's aim is to ascertain and give effect to the parties' intent. *Harrell v. Minn. Mut. Life Ins.*, 937 S.W.2d 809 (Tenn. 1996). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975).

Here, AF's Operating Agreement indicates that after certain other debts and expenses are paid,[6] in the event of a dissolution, the net proceeds from the sale of AF's assets should have been distributed to AF's members "on a pro rata basis . . . in accordance with their Capital Accounts." Appellant asserts that this language requires that the $60,000.00 obtained from the sale of AF's assets be distributed to AF's members based upon their percentage membership of AF. Respectfully, we cannot agree. Instead, we note that the language relied upon by Appellant clearly references not the members' membership percentages, but their Capital Accounts.

*Black's Law Dictionary* defines "capital account," as "[a]n account on a partnership's balance sheet representing a partner's share of the partnership capital." *Black's Law Dictionary* 20 (9th ed. 2009). In turn, "capital" is defined as "[m]oney or assets invested, or available for investment in a business." In other words, "[w]hen capital (defined to include cash, services or property) is contributed to the LLC, it is considered to be contributed to the respective member's capital account, the value of which is the sum total of the capital which the member has contributed to the LLC." *Business Transactions Solutions* § 56:171. Thus, AF's Operating Agreement appears to tie distributions of property owned by AF at dissolution not solely to each member's percentage membership, but to each member's capital contribution to AF. Furthermore, AF's Operating Agreement specifically provides that prior to the pro rata distribution urged by Appellant "any loans or debts owed to Members" must be paid. Because we have previously concluded that the evidence in the record supports only one conclusion— that Mr. McKee contributed 100% of the capital to AF—we cannot agree that the trial

---

[6] Other than a conclusory assertion that all or a portion of the funds should have been put aside pursuant to the Operating Agreement for "unforeseen liabilities," loans, or other debts, Appellant has pointed to this Court to no evidence establishing that such a practice was necessary or that any debts or loans were being pursued against AF nearly thirteen years after AF's sale to Cogeneration. Accordingly, we will only consider whether any of the funds were owed to Appellant on a pro rata basis.

court reached an inequitable result in following the rule set down in ***Owen*** to return Mr. McKee's capital contribution to him after the sale of AF's assets to Cogeneration.

Appellant argues, however, that the sale of AF's assets to Cogeneration was not predicated upon the dissolution of AF. Specifically, AF argues that "McKee's actions could not be described as an authorized dissolution of AF" under Tennessee Code Annotated Section 48-245-101.[7] Instead, Appellant asserts that the Operating

[7] Section 48-245-101 provides, in pertinent part:

> (a) Dissolution Events. Except as stated in subsection (b) or (c), an LLC is dissolved upon the occurrence of any of the following events:
>
> (1) If a period is fixed in the articles for the duration of the LLC, upon the expiration of that period;
> (2) By action of the organizers pursuant to § 48-245-201 or by the members pursuant to § 48-245-202, or upon the occurrence of an event specified in the articles or operating agreement;
> (3) By order of a court pursuant to § 48-245-901 and § 48-245-902;
> (4) By action of the secretary of state pursuant to § 48-245-302;
> (5) Except as provided in subdivision (a)(6) for LLCs created prior to July 1, 1999, upon the occurrence of any of the following events, unless the articles or operating agreement provide that one or more of the following events will not constitute an event of dissolution:
>
> (A) Death of any member;
> (B) Retirement from membership of any member;
> (C) Resignation or other withdrawal of any member;
> (D) Acquisition of a member's complete membership interest by the LLC;(E) Assignment of a member's governance rights under § 48-218-102 which leaves the assignor with no governance rights;(F) Expulsion of any member if expulsion is permitted by the articles;
> (G) Bankruptcy of any member;
> (H) Dissolution of any member;
> (I) Insanity of any member; or(J) The occurrence of any other event that terminates the continued membership of a member in the LLC;
> (6) For LLCs formed on or after July 1, 1999, or for LLCs formed prior to July 1, 1999, that elect by providing in their articles for the amendments by Acts 1999, ch. 455, regarding dissolution events to apply to such LLC, the LLC shall be dissolved upon the occurrence of:
>
> (A) In accordance with § 48-245-202 or any event specified in the articles or operating agreement including, but not limited to, events of withdrawal by a member or action or procedure as set forth in

Agreement's provision regarding the distribution of profits should apply, which requires that "net profits . . . shall be apportioned among the Members in their respective percentages." Respectfully, we cannot agree. First, we note that despite the fact that this action did not involve judicial dissolution of AF and the trial court never specifically found grounds to dissolve AF, there can be no dispute that AF, in fact, ceased to exist in 2003 when its assets were purchased by Cogeneration. Tennessee Code Annotated Section 48-245-101(a)(6)(B) specifically provides that an LLC will be dissolved if it merges with another organization and "is not the surviving organization." Thus, under the unique circumstances of this case, the purchase of all of AF's assets by Cogeneration was a triggering event for dissolution. Given that AF was for all intents and purposes dissolved in 2003, the trial court did not err in apportioning the proceeds of the sale first to the only member who had made a capital contribution to AF, as suggested by the distribution terms contained in AF's Operating Agreement. As such, like the trial court in *Owen*, the trial court in this case "reached an equitable result that was just and reasonable." *Owen*, 2013 WL 5459035, at *6.

**IV.**

Finally, Appellant argues that the trial court erred in dismissing his requests for an accounting and the appointment of a receiver as moot.[8] Specifically, in his complaint, Appellant alleges that:

> [J]ust cause exists for compelling [Mr.] McKee and AF to provide a full accounting of all financial transactions and agreements involving AF and [Mr.] McKee . . . when [Mr.] McKee [] served as the Chief Manager of AF. In addition, the Court should appoint a receiver to take control of AF and proceed with marshaling all assets of the company and conducting an investigation into the wrongful financial dealings of [Mr.] McKee[.]

To support this request for relief, Appellant relies on Tennessee Code Annotated Section 48-230-105, which states:

---

the    articles or operating agreement; or
            (B) A merger in which the LLC is not the surviving organization.

[8] In *Huggins II*, this Court appears to take issue with AF's "attempt[] to narrow the issue to whether the trial court erred by declining to appoint a receiver or order an accounting, the primary relief requested from AF by Mr. Huggins in the original complaint." *Huggins II*, 2015 WL 866437, at *3. Here, however, Appellant's own brief specifically frames this issue as concerning his request for an accounting and his request that a receiver be appointed. Furthermore, we agree with AF that Count V of the complaint in this matter specifically requests this relief. Accordingly, we will consider this issue as framed by the Appellant.

> If an LLC or a manager or governor of the LLC violates a provision of chapters 201-248 of this title, a court in this state may, in an action brought by a member of the LLC, grant any equitable relief it considers just and reasonable in the circumstances and award expenses, including counsel fees and disbursements, to the member.

This Court has previously held that relief under this Section is discretionary, and therefore, reviewed under the abuse of discretion standard. *See Shell v. King*, No. E2003-02124-COA-R3-CV, 2004 WL 1749186, at *8 (Tenn. Ct. App. Aug. 5, 2004). Indeed, both a request for an accounting and a request that a receiver be appointed are left to the sound discretion of the trial court. *See Norris v. Stuart*, No. M2004-01839-COA-R3-CV, 2006 WL 721299, at *4 (Tenn. Ct. App. Mar. 20, 2006) ("Whether to appoint a receiver, and the selection of the receiver, are matters within the sound discretion of the Chancellor.") (citing *Young v. Cooper*, 30 Tenn. App. 55, 203 S.W.2d 376, 387 (Tenn. Ct. App. 1947)); *Cochran v. L.V.R. & R.C., Inc.*, No. M2004-01382-COA-R3-CV, 2005 WL 2217067, at *6 (Tenn. Ct. App. Sept. 12, 2005) (noting that ordering an accounting is "within the court's equitable discretion"). As such, these requests are also reviewed for an abuse of discretion.[9] *See State ex rel. Gibbons v. Smart*, No. W2013-00470-COA-R3-CV, 2013 WL 5988982 at *6 (Tenn. Ct. App. Nov. 12, 2013) ("[A]ppellate courts review decisions made by the chancery court, in the course of administering a receivership, under an abuse of discretion standard."); *Moree v. Moree*, No. 03A01-9509-CH-00309, 1996 WL 62106, at *3 (Tenn. Ct. App. Feb. 14, 1996) (applying the abuse of discretion standard to the party's request for an accounting). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Johnson v. Richardson*, 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

We begin with Appellant's argument that the trial court erred in concluding that "ordering an accounting in this case would be a futile act" because any relevant books and records relating to AF's operations "are or were in the hands of Mr. Huggins or his counsel." As this Court explained:

---

[9] We acknowledge that this Court in *Huggins II* rejected the application of the abuse of discretion standard because the trial court dismissed Appellant's claims in their entirety. *See Huggins II*, at *3 n.2 ("As the trial court dismissed [Appellant's] claims entirely, the appropriate standard of review is *de novo*."). In this appeal, however, the trial court's written order does not dismiss Appellant's claims in their entirety, but treats each claim for relief separately. This Court has previously recognized that different issues may invoke different standards of review. *See e.g., Key v. Blount Mem'l Hosp., Inc.*, No. E2010-00752-COA-R3CV, 2011 WL 2135358, at *12 (Tenn. Ct. App. May 31, 2011). As such, unlike in *Huggins II*, we will apply the appropriate standard of review applicable to each individual issue.

- 17 -

The courts ordinarily decline to provide judicial relief in cases that do not involve a genuine and existing controversy requiring the adjudication of present rights. See *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977). Thus, cases must remain justiciable throughout the entire course of the litigation, and the concept of mootness involves circumstances that render a case no longer justiciable. *See McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). A moot case has lost its character as a present, live controversy, *see McCanless v. Klein*, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945), and a case will be considered moot if it no longer serves as a means to provide some sort of relief to the prevailing party. See *McIntyre v. Traughber*, 884 S.W.2d at 137; *Massengill v. Massengill*, 36 Tenn. App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

*Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998). Furthermore, this Court has previously recognized the basic tenet that "[t]he law does not require futile acts." *Baggett v. Baggett*, 422 S.W.3d 537, 545 (Tenn. Ct. App. 2013) (quoting *Lyle v. Lyle*, No. 03A01-9412-GS-00434, 1995 WL 324033 at *2 (Tenn. Ct. App. May 31, 1995) (citing *Sharp v. Lance*, 602 S.W.2d 238, 240 (Tenn. 1980))). Generally, whether a claim is moot involves a question of law that this Court will review de novo. *All. for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338–39 (Tenn. Ct. App. 2005).

AF argues that the trial court correctly denied Appellant's request for an accounting where Appellant and Mr. Huggins had the ability to review AF's books and records without court intervention. "An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due from another. It is available only when legal remedies are inadequate for the purpose." *Gibson's Suits in Chancery* § 30.01 (8th ed. 2004) (footnote omitted) (citing *Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972)). Thus, we agree that if Appellant had access to AF's books and records without the necessity of court intervention, his claim is futile.

Here, AF points to both its statement of undisputed material facts and Mr. Huggins's deposition testimony to establish that Mr. Huggins, and therefore, Appellant had, at all times relevant to this action, access to AF's books and records. AF's statement of undisputed material facts contains the following allegations:

> 9. During the time [Mr.] Huggins operated Alternative Fuels, the corporate records, including any minute books, would

have been kept by the Grant Konvalinka firm or the Baker Donelson firm and the financial records would have been kept by the accounting firm of Wilkins, Crews & Henderson.[10]

10. The Grant Konvalinka firm or the Baker Donelson firm did not represent Mr. McKee regarding Alternative Fuels or any other matter.

11. Mr. McKee did not operate Alternative Fuels.

12. The documents relating to the sale of Alternative Fuels' assets to Cogeneration were produced to [Mr.] Huggins in this litigation.

(footnotes omitted). To support these allegations, AF relied primarily on Mr. McKee's affidavit. Specifically, in his affidavit, Mr. McKee stated that he "never had any of the books and records of [AF] except records from when I sold the assets to Cogeneration; copies of those records were produced by my attorneys to Mr. Huggins over seven years ago." Mr. McKee also stated that he never operated AF and that he was never represented either by the Grant Konvalinka firm or the Baker Donelson firm.

Appellant disputed many of these allegations, arguing that the evidence in the record was insufficient to establish that Mr. Huggins, and therefore Appellant, had access to AF's books and records. To show that there was a material factual dispute on this issue, Appellant pointed to Mr. Huggins's deposition testimony, which Appellant contended contained only one definitive statement regarding the location of the books and records: that they "would have resided with whoever had it." Appellant also disputed that Mr. McKee produced all of the documents concerning the sale of AF's assets to Cogeneration. Appellant did not dispute, however, that neither law firm mentioned ever represented Mr. McKee, nor did he dispute that Mr. McKee held no other position with AF other than member.[11]

We cannot agree that Appellant has created a genuine dispute of fact on the issue of AF's records being available to Mr. Huggins to make summary judgment inappropriate. First, we note that the complaint specifically seeks an accounting only of those actions taken by Mr. McKee as Chief Manager of AF. However, it was undisputed that Mr. McKee never served in this position with AF. Furthermore, we conclude that Appellant unfairly characterizes Mr. Huggins's deposition testimony on this issue as indicating that he had no access to AF's books and records. Accordingly, we find it helpful to reproduce Mr. Huggins's testimony on this issue in its entirety:

---

[10] There is no dispute that Wilkins, Crews, and Henderson is an accounting firm that was employed by AF during AF's operation.

[11] Appellant asserted, however, that Mr. McKee improperly seized control of AF to sell its assets to Cogeneration.

Q. Do you know where the books and records of Alternative Fuels, LLC are?

A. No, sir.

Q. Where were they the last time you saw them?

A. Most likely the financial records would have resided with the accounting firm, which probably was Wilkins, Crews & Henderson or whatever it became after that. Other records may have been kept by Grant, Konvalinka or Baker, Donelson. I just don't really recall which one was involved or if both were involved.

Q. Do you recall who had the minute book for Alternative Fuels?

A. It would have resided with whoever had it. Now, also I would say that at one point in time that obviously on these documents it talks about Mike Carter being involved as secretary, and he may have had them at some point in time. Most likely the folks that would have the most recent information would have been either Grant, Konvalinka or Baker, Donelson, and they would have kept all of the corporate records, including any minute books.

Q. As you sit here today, you don't know which would have been the law firm?

A. I don't recall, no, sir.

From our review of the above testimony, Mr. Huggins testified that more likely than not, AF's financial records were kept by Wilkins, Crews & Henderson and that either Grant, Konvalinka or Baker Donelson most likely "would have kept all of the corporate records, including any minute books." Other portions of Mr. Huggins's testimony make clear that he, rather than AF or Mr. McKee, employed the two law firms. Additionally, Mr. Huggins testified that he was one of the people supplying information to Wilkins, Crews & Henderson in order for the accounting firm to perform work for AF. Moreover, Appellant points to no specific evidence in the record showing that Mr. Huggins was unable to obtain the relevant records from these firms without court intervention.

Based upon the record before us, we conclude that Mr. Huggins's testimony, coupled with the affidavit of Mr. McKee, establishes that Mr. Huggins, and therefore Appellant, at all times relevant to this litigation, had access to or the ability to access the financial records of AF, other than the records relative to the sale of AF's assets to Cogeneration. As shown above, Mr. Huggins admits that the most recent AF documents would "[m]ost likely" been in the hands of Mr. Huggins's own attorneys or an accounting firm that Mr. Huggins employed to perform financial work for AF. Although Appellant takes issue with the lack of a "definitive statement," Appellant cites no law that the trial court can only rely on admissions by a party opposing summary judgment if those

admissions are "definitive."[12] Indeed, in the typical civil case, "a mere preponderance of the evidence" is required to sustain an allegation. ***Endowment Rank of Order of K.P. v. Steele***, 107 Tenn. 1, 63 S.W. 1126, 1129 (Tenn. 1901); *see also* ***State v. Sprunger***, 458 S.W.3d 482, 493 (Tenn. 2015) (noting that civil proceedings typically apply the "preponderance of the evidence" burden of proof). A preponderance of the evidence exists when the proponent of a fact simply proves its existence "more likely than not." ***McEwen v. Tenn. Dep't of Safety***, 173 S.W.3d 815, 827 n.19 (Tenn. Ct. App. 2005) ("Proving an allegation by a preponderance of the evidence requires a litigant to convince the trier-of-fact that the allegation is more likely true than not true.") (citing ***Austin v. City of Memphis***, 684 S.W.2d 624, 634–35 (Tenn. Ct. App. 1984)). Mr. Huggins's testimony that the financial documents were "most likely" in the hands of those in his employ, absent any contrary evidence, is sufficient to meet this burden.

Based on the foregoing, we agree with the trial court that AF's books and records, other than those related to the sale of AF's assets to Cogeneration, "are or were in the hands of Mr. Huggins or his counsel." Because an accounting must be predicated on the "legal inability of a plaintiff to determine how much, if any, money is due from another," *Gibson's Suits in Chancery* § 30.01, the fact that Mr. Huggins, and therefore Appellant, had AF's books and records in his counsel's or accounting firm's possession negates the need for an accounting. Under these circumstances, the trial court did not err in declining to order an accounting with regard to AF's books and records prior to the sale of AF's assets to Cogeneration.

Appellant next argues that regardless of whether he had access to AF's records for the period of time he was operating AF, he still has not received all of the documents related to Mr. McKee's sale of AF's assets to Cogeneration. As previously discussed, AF alleged in its statement of undisputed material facts that it produced all documents relative to the sale of AF's assets to Cogeneration in discovery. Appellant took issue with this allegation, contending that it had not received "records reflecting the manner in which distributions of consideration received from Cogeneration for the sale of AF's assets were to be distributed to AF's members" or "documents confirming how or when any consideration received from Cogeneration for the sale of AF's assets flowed from Cogeneration through AF and to [Mr.] McKee." The trial court disagreed, however, and found that Appellant "produced no evidence to contradict Mr. Mckee's sworn statement that he long ago produced . . . all records he had relating to [AF]."

Again, we agree with the trial court. Nothing in Appellant's response to AF's statement of undisputed facts points to any specific facts showing that relevant

---

[12] Bryan Garner, in his *Dictionary of Legal Usage*, notes that the words "definite" and "definitive" are often confused, with "definitive" being most often used when "definite" is called for. Bryan Garner, *Garner's Dictionary of Legal Usage* 257–58 (3ʳᵈ ed. 2011). "Definite" means "fixed exact, explicit[,]" while "definitive" means "authoritative, conclusive, exhaustive, [or] providing a final resolution[.]" ***Id.***

documents were not produced. *See Rye*, 477 S.W.3d at 265 (requiring specific facts to defeat summary judgment). Instead, Appellant merely seeks to create some metaphysical doubt that there exist some other documents with regard to the Cogeneration transaction that have been withheld by Mr. McKee. *Id.* We understand the inherent difficulty faced by Appellant on this issue—Appellant is essentially required to show that additional documents exist that are relevant to this litigation despite the fact that the fabled documents are as-yet unknown to him. However, given Mr. McKee's sworn statement that he produced all his records from his time operating AF, we cannot conclude that Appellant has met his burden to show a genuine dispute of fact on the issue of whether other documents that have not been produced exist. Furthermore, as previously discussed, there is no genuine factual dispute regarding the consideration paid to Mr. McKee for the sale of AF's assets to Cogeneration or the fact that Mr. McKee retained all of the proceeds from the sale. Accordingly, it is entirely unclear what purpose additional documents concerning the consideration paid and its distribution would have in this case.

As a final point, Appellant argues that the trial court erred in dismissing his request that a receiver be appointed to marshal AF's assets and conducting an investigation into Mr. McKee's wrongful financial dealings. Tennessee courts "are all vested with power to appoint receivers for the safekeeping, collection, management, and disposition of property in litigation in such court, whenever necessary to the ends of substantial justice[.]" Tenn. Code Ann. § 29-1-103. The appointment of a receiver, however, "is a proceeding in the nature of extraordinary process ancillary to a pending suit." ***Orman v. Bransford Realty Co.***, 168 Tenn. 70, 73 S.W.2d 713, 715 (Tenn. 1934); *see also Black's Law Dictionary* 101 (9th ed. 2009) (defining "ancillary" as "supplementary"). "A receivership is remedial and it is not an end in itself. A receivership is ancillary or auxiliary to proper equitable relief, that is, a receivership is a provisional remedy granted only in connection with an action for some other purpose."65 Am. Jur. 2d Receivers § 7 (footnote omitted). As explained by American Jurisprudence:

> Although under some circumstances, a court may appoint a receiver as an independent remedy and as the main object and purpose of an action, the general rule is that a receiver may be appointed only as ancillary relief to a suit pending for some purpose other than the appointment of a receiver. In other words, a plaintiff may not bring an action solely to set up a receivership. . . . The theory underlying this rule is that the receiver is appointed to maintain the status quo while the plaintiff is pursuing his or her remedy.

65 Am. Jur. 2d Receivers § 25 (footnote omitted). In Tennessee, "[a] receiver may be appointed to wind up and liquidate the business and affairs of a corporation in an action for dissolution." *Gibson's Suits in Chancery* § 24.08. However, "[t]he [c]ourt has no

right to appoint a receiver of property that is not subject to execution or attachment," except in limited circumstances. *Gibson's Suits in Chancery* § 24.03.

In his brief, Appellant concedes that all his direct claims against Mr. McKee were dismissed in **Huggins I**. In addition, Appellant argued in his brief that this action was not a judicial dissolution action. Indeed, nothing in Count V can be fairly characterized as seeking an order of judicial dissolution as to AF. Furthermore, all of Appellant's remaining requests for relief have been denied by the trial court and affirmed by this Court. Finally, the "prayer for relief" section of the complaint in this case seeks only equitable relief against AF and does not in any way request damages against AF.[13] As such, Appellant retains no causes of action for damages against AF upon which a request for a receiver may attach. Accordingly, we affirm the decision of the trial court to dismiss Appellant's request for the appointment of a receiver.

## Conclusion

The judgment of the Hamilton County Chancery Court is reversed in part and affirmed in part. Costs of this appeal are taxed to Appellant, John P. Konvalinka, and his surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[13] The only damages mentioned are punitive damages against Mr. McKee and compensatory damages "arising from the misconduct of" Mr. McKee. In fact, the complaint asks that both Mr. Huggins and AF be compensated for Mr. McKee's wrongdoing.