IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 3, 2021 Session

## CAROLYN DIANE LONG v. STEVEN LAWRENCE LONG

**Appeal from the Probate and Family Court for Cumberland County**
**No. 2014-PF-4162       Larry Michael Warner, Judge**

_____

### No. E2020-01350-COA-R3-CV

_____

Following a bench trial in this divorce action, the trial court entered an order in October 2018, granting the parties a divorce and distributing the marital estate. Upon the wife's appeal, this Court vacated the trial court's distribution of marital property and remanded, directing the trial court to make sufficient findings of fact and conclusions of law, pursuant to Tennessee Rule of Civil Procedure 52.01, concerning the classification and valuation of various real estate and real estate partnership assets. Following an evidentiary hearing on remand, the trial court entered a final order in September 2020. Noting that the parties had stipulated that the wife's interests in a realty company and two property partnerships were separate property, the trial court found that the wife's partnership interest in a fourth realty enterprise at issue was marital property and also found that several specific realty assets were marital property. The trial court determined its valuation of each property or property interest and, pursuant to the factors provided in Tennessee Code Annotated § 36-4-121(c), set forth what it found to be an equitable distribution of the marital property. Wife has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Eric J. Burch, Manchester, Tennessee, for the appellant, Carolyn Diane Long.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellee, Steven Lawrence Long.

## OPINION

## I. Factual and Procedural Background

The plaintiff, Carolyn Diane Long ("Wife"), and the defendant, Steven Lawrence Long ("Husband"), have been involved in this action since Wife filed a complaint for divorce in October 2014 in the Cumberland County Probate and Family Court ("trial court"). This matter initially came before this Court on appeal in *Long v. Long*, No. E2018-01868-COA-R3-CV, 2019 WL 3986281 (Tenn. Ct. App. Aug. 23, 2019) ("*Long I*"). In *Long I*, this Court vacated the trial court's division of marital property and remanded "with instructions to make sufficient findings of fact and conclusions of law as required by Tenn. R. Civ. P. 52.01," specifically as to the trial court's classification of Wife's partnership interest in a partnership entity known as Pioneer Properties, the values of specific properties, and the trial court's overall distribution of marital property. *See Long I*, 2019 WL 3986281, at *1, 9. This Court set forth the following factual and procedural background in *Long I*:

> [Wife] and [Husband] were married for the first time in 1984. Following a divorce a year later, they remarried in 1987. Wife's family was involved in real estate development and investment. In 1993, wife's mother and stepfather created and funded a partnership entity known as "Pioneer Properties." The partners were wife, her brother, sister, two stepbrothers, and her stepfather. Wife testified that the primary activity of Pioneer Properties was "buying land, subdividing it, and then selling it." It is undisputed that neither husband nor wife contributed any funds to Pioneer Properties. When wife received distributions from the partnership, she deposited them into an account jointly held by the parties.
>
> In 1988, while they were married, the parties acquired a property on George Smith Road. At that time, they were contemplating divorce and, according to wife, they "were separated for a long time." Wife intended to move into the house on George Smith Road and live in it by herself. Husband executed a deed quitclaiming his interest in the George Smith Road property to wife in 1988. The parties reconciled and lived together in the house for several years. Later, they moved to another house and rented the George Smith Road property.
>
> On October 31, 2014, wife filed her complaint for divorce. The only issues contested were the classification of two assets – wife's interest in Pioneer Properties and the George Smith Road property – and the division of the marital estate. By agreement, the trial was bifurcated. At the first hearing on March 10, 2017, the trial court was asked to decide whether the two contested assets were marital or wife's separate property. The parties

- 2 -

agreed that the interests held by wife in three other business entities, Pioneer Realty, Inc., Robinson Properties Family LP, and RLW Properties, were her separate property. No value for these three assets was presented to the trial court, and it did not find or set a value for any of them.

The only witnesses at the relatively brief first hearing were husband and wife. Wife argued that, notwithstanding the fact that the two contested assets were acquired during the course of the marriage, they were gifts to her and should be classified as her separate property. Husband argued that he made substantial contributions to the preservation and appreciation of the assets, and therefore their increase in value during the marriage should be classified as marital property. Additionally and in the alternative, husband argued that the assets were converted to marital property by operation of the doctrines of commingling and transmutation.

The only factual findings pertaining to the disputed assets in the trial court's order following the first hearing are as follows:

> That with regard to the home and real property on George Smith Road, in Cumberland County, titled solely in the name of the [wife]: The [husband] conveyed his interest in said real property to the [wife], by quitclaim deed in 1988; and the parties further exhibited an intent throughout the marriage that said real property would remain the [wife's] sole and separate property.

> That with regard to the parties' interest in the partnership entity known as Pioneer Properties: This entity was a more fluid asset, with properties being bought and sold at various times throughout the marriage. The Court finds that this entity is marital property due to the fluidity of the asset and due to the fact that proceeds were regularly deposited from said partnership into a joint account of the parties.

(Numbering in original omitted).

The second hearing took place on August 17, 2018. The trial court heard testimony from the parties and a real estate appraiser. The parties agreed on the values of many, but not all, of the numerous marital real

- 3 -

estate assets.  The only factual findings contained in the trial court's final judgment state as follows:

> That for at least 27 years of this 31 year marriage the wife treated all of the property the parties collectively owned as if it were owned equally by her and husband and that all of their property should now be divided equally.

> Pioneer Properties is a real estate investment business owned and run by wife and her family, and it would not be feasible for husband to continue in that business relationship after the divorce.

(Numbering in original omitted).

The trial court awarded wife the entire interest in Pioneer Properties. Wife estimated the value of this asset to be $311,295.81.  It does not appear from the record that husband proffered a written estimated value of the Pioneer Properties interest.  During the second hearing, husband's counsel argued that the value of wife's interest was $429,527.50.  To offset this award, the court awarded husband apartments on Old Mail Road that the parties agreed were worth $300,000; two parcels of land on Woodlawn Road worth $90,000, and a parcel on Rockledge Drive worth $3,000.  The trial court further ordered several other real estate holdings to be sold and the proceeds split equally.  The marital residence was ordered to be sold and the proceeds equally divided after payment of debts associated with the residence.  The parties did not agree on the value of all these assets, including the marital residence.  As noted, the trial court made no findings of fact regarding the value of any asset of the marital or separate estates. Consequently, it is difficult to state an accounting of the division of the assets with any certainty.  As appendices to her brief, wife submits two charts showing her argument as to the division according to her values, and according to husband's.  Using wife's values, she states that she was awarded property worth $622,147.08, and husband awarded property worth $641,851.27.  Using husband's values, wife states that the property was divided $659,109.58 to her, and $678,813.77 to husband.  Wife timely filed a notice of appeal.

*Id.* at *1-2.

On appeal in *Long I*, Wife raised issues concerning whether the trial court had made sufficient findings of fact and conclusions of law and whether the trial court had erred by classifying her interest in Pioneer Properties as marital property. *Id.* at *2. Husband raised an issue concerning the trial court's classification of the property located on George Smith Road as Wife's separate property. *Id.* Because this Court in *Long I* affirmed the "trial court's judgment finding the George Smith Road property to be wife's separate asset," *see id.* at *9, the classification of that property was not at issue on remand. Concerning the trial court's lack of sufficient findings, this Court stated in pertinent part:

> [T]he trial court did not make a finding regarding the value of any of the assets, including those assigned to wife as her separate property, and those upon which the parties disagreed as to their value. The trial court's order does not refer to Tenn. Code Ann. § 36-4-121(c), or make a finding regarding any of the factors prescribed therein.

*Id.* This Court vacated the trial court's division of marital property and "remanded for appropriate findings of fact and conclusions of law pursuant to Tenn. R. Civ. P. 52.01." *Id.*

As to the trial court's initial classification of Pioneer Properties as marital property, this Court stated in *Long I*:

> Because wife acquired her partnership interest while the parties were married, the initial presumption is that it is marital property. *Gant v. Gant*, No. M2015-02160-COA-R3-CV, 2017 WL 417225, at *5 (Tenn. Ct. App., filed Jan. 31, 2017). "Wife, as the party seeking to rebut this presumption, has the burden of proving by a preponderance of the evidence that the asset is separate property." *Cox v. Cox*, No. E2016-01097-COA-R3-CV, 2017 WL 6517596, at *4 (Tenn. Ct. App., filed Dec. 20, 2017) (internal quotation marks omitted); *Trezevant v. Trezevant*, 568 S.W.3d 595, 609 (Tenn. Ct. App. 2018). Wife testified that her interest in Pioneer Properties was a gift from her family to her alone, and that it was always intended to be separate. Husband argues that wife did not meet her burden in establishing it was a gift, because she presented "no other supporting documentation" and "no corroborating witnesses." The trial court did not make a finding regarding whether wife met her burden to prove it was a gift, stating only that "this entity is marital property due to the fluidity of the asset and due to the fact that proceeds were regularly deposited from said partnership into a joint account." Several possible inferences could be drawn from the trial court's order. It may have implicitly credited wife's

testimony that the asset was a gift, but found nevertheless that other factors militated in favor of classifying it as marital. Another possibility is that the trial court did not consider it a gift, and that was another factor requiring its marital classification. The absence of an explicit factual finding makes it impossible to tell with certainty.

*Id.* at *3. Husband argued in *Long I*, as he does in this appeal, that "any appreciation in value of wife's partnership interest was properly classified as marital pursuant to Tenn. Code Ann. § 36-4-121(b)(1)(B)(i), because he 'substantially contributed to its preservation and appreciation.'" *Id.* at *4. This Court determined that the trial court had "made no specific finding regarding whether husband made a substantial contribution to the preservation and appreciation of the Pioneer Properties interest." *Id.* Noting the trial court's finding that "the assets of the partnership were 'fluid,'" this Court determined such finding to "implicate[], to some extent, the doctrines of commingling and transmutation which husband argued were applicable to convert wife's partnership interest to marital property." *Id.* at *5.

In vacating the trial court's ruling that Wife's interest in Pioneer Properties was marital, this Court directed the trial court on remand as follows:

> On remand, the trial court is directed to consider and make specific findings regarding the value of the asset and whether: (1) the interest was a separate gift to wife, (2) husband made a substantial contribution to the preservation and appreciation of the asset, and (3) the doctrines of commingling and/or transmutation apply.

*Id.* at *6.

Upon remand, each of the parties respectively filed a brief with the trial court, Wife in December 2019 and Husband in January 2020. The trial court conducted an evidentiary hearing on June 5, 2020, hearing testimony from the parties; Wife's mother, L.W.; and Wife's brother, S.R. The transcript of this hearing demonstrates that at the close of each opening statement, each party's counsel submitted written proposed findings of fact and conclusions of law to the trial court. Husband's counsel also requested that the trial court make a credibility finding as to each party. During closing arguments, Wife's counsel began and ended by requesting that the trial court review the parties' briefs before making a ruling. At the end of his closing argument, Husband's counsel asked that the trial court "review both proposed findings of fact and conclusions of law, but that – and then make your independent ones based on what the case law requires, but looking at the values and setting values on the property . . . ." The trial court then stated:

Appreciate the preciseness of you gentlemen. I am going to review both briefs. I have slept a few times since we've had these hearings and I need to freshen up. So Court will be at ease. I'll get that to you within ten days.

On August 31, 2020, Wife filed a proposed "Order," which is in the appellate record with a handwritten note across the top of the first page stating, "Judge signed competing order." The "Final Order" entered by the trial court is date stamped as having been received by the trial court clerk and master on September 2, 2020, and undisputedly represents the trial court's adoption of Husband's proposed order. The trial court signed and entered the Final Order on September 2, 2020, with no handwritten additions other than the date of entry and no changes of any kind. Concerning the trial court's adoption of Husband's proposed findings of fact and conclusions of law, the Final Order stated:

Both parties have submitted proposed findings of fact and conclusions of law, which the Court has considered in making its ruling, which ruling is an independent determination of the Court. The Court has reviewed the transcript of the evidence in this matter, the entire file, and independently recalls the trial of this case. The Court has considered the arguments of counsel, including competing requests by each party for particular findings consistent with the evidence presented. Despite the competing requests from the parties, the Court has made an independent determination of its own, as reflected by this Order. Husband has further requested credibility findings.

From a review of the entire record in this cause, the evidence presented both by witnesses who testified and exhibits received into evidence, along with the arguments of counsel, the Court has made an independent deliberation and decision, and the Court makes the following findings of fact and conclusions of law[.]

In the penultimate paragraph, prior to the equal division of costs between the parties, the Final Order stated:

This constitutes the final order in this case. The Court notes that each party has submitted competing orders, along with competing findings of fact and conclusions of law. The Court has determined that this order correctly reflects the Court's independent and reasoned judgment, and has signed this Order as the Court's own order.

In the final order, the trial court confirmed its prior ruling that Wife's interest in Pioneer Properties was marital property, assigned a value to each of the properties not previously assigned a value, and set forth what it found to be an equitable distribution of the marital property. Regarding the parties' credibility, the trial court stated in the final order: "The Court specifically credits Husband's testimony as credible, and finds Wife's testimony, particularly as to Pioneer Properties, to lack credibility." The trial court also found that Husband was the "disadvantaged spouse" "[b]ased on the extremely lengthy marriage, where Wife routinely made more money than Husband." The court directed each party to pay his or her own attorney's fees.

In response to competing testimony concerning the value of Pioneer Properties at the time of the remand hearing, the trial court stated that it was relying on the opinion of a real estate appraiser, David Mainord, whose testimony and appraisal report concerning the Pioneer Properties office building property and adjoining parcel Husband had presented during the 2018 trial. Although it is unclear from the record that Mr. Mainord actually opined in either his testimony or his report concerning the value of Wife's one-third interest in Pioneer Properties as a whole, Wife has not raised an issue on appeal concerning the trial court's adoption of Husband's valuation of this one-third interest in the amount of $429,527.59 over her valuation at $341,195.00. At trial, Mr. Mainord acknowledged that his opinion indicated higher values for the two properties than the county tax assessor's values, and he stated that market value appraisals were generally higher in this regard. Husband's valuation of the Pioneer Properties partnership interest, adopted by the trial court, appears to have been based in part on Mr. Mainord's appraisal of the office building property and adjoining parcel.

As the trial court noted, Wife had increased her valuation of the Pioneer Properties partnership interest between the 2018 trial and the remand hearing from $311,295.81 to $341,195.00. It is therefore undisputed that Pioneer Properties increased in value during the course of the proceedings. The trial court also made the finding in its final judgment that the value of Pioneer Properties "increased during the marriage, and that Husband's substantial contributions contributed to the increase."

The trial court set forth values for ten properties it determined to be part of the marital estate. Including the Pioneer Properties partnership interest, the parties had submitted competing values for four of the marital properties as follows:

- Pioneer Properties partnership interest, valued by Husband at $429,527.59 and by Wife at $341,195.00
- Marital Residence, valued by Husband at $375,000.00 and by Wife at $322,000.00
- Ownership interest in Stonecrest LLC, valued by Husband at $20,000.00 and by Wife at $9,750.00

- Ownership interest in Caney Fork Properties, LLC, valued by Husband at $200,000.00 and by Wife at $136,325.00

In each of the instances listed above, the trial court adopted Husband's valuation. The properties with undisputed values, adopted by the trial court, were:

- Old Mail Road Apartments, valued at $300,000.00
- Woodlawn Road (two parcels, valued at $90,000.00 collectively)
- Lot 68 in Laurelwood, valued at $35,000.00
- Lot 17 in Deer Creek, valued at $25,000.00
- One-half ownership of three lots in Crossroads Village, valued at $14,000.00
- Rockledge Drive/Lake Pomeroy Division parcel, valued at $3,000.00

As to the value of the George Smith Road property, which the trial court confirmed as Wife's separate property, the trial court did not assign a specific value. However, the court did find that "Wife's separate interest in Pioneer Realty, RLW Partnership and Robinson Family Properties, LP, are valued at approximately five hundred thousand dollars ($500,000.00)."

In setting forth what it found to be an equitable distribution of the marital property, the trial court awarded Wife's interest in Pioneer Properties solely to her. The court awarded four properties solely to Husband: (1) the Old Mail Road Apartments; (2) the Woodlawn Road property; (3) the three lots in Crossroads Subdivision; and (4) the Rockledge Drive/Lake Pomeroy parcel. The court directed that three properties should be sold and the proceeds divided between the parties: (1) the marital residence, which was Lot 96 in the Laurelwood Subdivision (with mortgage debt to be paid before proceeds would be allocated to the parties); (2) Lot 68 in the Laurelwood Division; and (3) Lot 17 in the Deer Creek Subdivision. The court further ordered that the parties' interests in Stonecrest, LLC ("Stonecrest"), and Caney Fork Properties, LLC ("Caney Fork"), would be equally divided between them. The court awarded to Wife $42,424.86 from Husband's portion of the sale of the marital residence to reimburse her for expenses she had paid during the pendency of the divorce. Wife timely appealed.

## II. Issues Presented

Wife presents three issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by adopting verbatim Husband's findings of fact and conclusions of law such that it did not fashion its own independent analysis and judgment.

2.      Whether the trial court erred by finding that Wife's partnership interest in Pioneer Properties was marital property.

.

3.      Whether the trial court erred in its distribution of the marital property.

In his responsive brief, Husband has listed five "Issues Presented." However, we determine that the first three issues listed by Husband are sub-issues appropriately addressed within Wife's first issue concerning the trial court's order. Additionally, we will address "specific questions" noted by Husband concerning the classification of Pioneer Properties within the second issue listed above.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of appellate review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts,* 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Stratienko v. Stratienko*, 529 S.W.3d

389, 398-99 (Tenn. Ct. App. 2017) (citing *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005)). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

IV.  Independent Judgment of the Trial Court

Wife contends that the trial court erred on remand by adopting verbatim Husband's findings of fact and conclusions of law and thereby failing to fashion its own independent analysis and judgment. Husband asserts that in adopting the proposed order submitted by Husband, the trial court made sufficient findings of fact and conclusions of law and "simply found, exercising [its] own independent judgment, that the Husband's position was correct." Husband also asserts that Wife waived this issue by filing her own proposed order prior to the filing of Husband's proposed order and by failing to file a post-trial motion objecting to the trial court's adoption of Husband's order. Upon careful review, we determine Husband's waiver argument to be unavailing. We will therefore consider Wife's issue concerning the independence of the trial court's judgment as a threshold matter.

Our Supreme Court has set forth the standard for a trial court's practice of receiving and utilizing party-prepared findings of fact and conclusions of law as follows in pertinent part:

> In the almost thirty years since *Anderson* [*v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985),] was decided, most courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied. <u>First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision</u>.

*Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 315-16 (Tenn. 2014) (emphasis added). In vacating the trial court's order granting summary judgment in *Smith*, the High Court stated:

> In this case, the judicial act should have consisted not only of announcing a decision to grant part of [the appellant's] motions for summary judgment but also stating the grounds for that decision. Because the record demonstrates that the trial court did not provide the basis for its

> decision prior to the preparation of the draft orders, the grounds stated in the order cannot be attributed to the trial court.

*Smith*, 439 S.W.3d at 317. This Court has recently noted that "[a]lthough *Smith* involved summary judgment, this Court has previously applied the reasoning in *Smith* to proceedings not involving summary judgment." *Cunningham v. Eastman Credit Union*, No. E2019-00987-COA-R3-CV, 2020 WL 2764412, at *4 (Tenn. Ct. App. May 27, 2020) (citing as examples *Deberry v. Cumberland Elec. Membership Corp.*, No. M2017-02399-COA-R3-CV, 2018 WL 4961527, at *2 (Tenn. Ct. App. Oct. 15, 2018); *In re Dakota M.*, No. E2017-01855-COA-R3-PT, 2018 WL 3022682, at *6 (Tenn. Ct. App. June 18, 2018); *In re Colton B.*, No. M2017-00997-COA-R3-PT, 2017 WL 6550620, at *5 (Tenn. Ct. App. Dec. 22, 2007)).

To reiterate what occurred procedurally in the case at bar on remand, each party submitted a brief to the trial court prior to the evidentiary hearing. These briefs are in the record on appeal, and neither appears to be a template for the trial court's final order. The remand hearing transcript reflects that the parties each submitted proposed findings of fact and conclusions of law to the trial court at the beginning of the hearing; however, neither of these proposed findings of fact and conclusions of law is in the record. After the presentation of additional testimony and argument, the trial court stated orally at the close of the hearing that it was "going to review both briefs" and "get that [a ruling] to you within ten days." The next indication of any activity in the record is Wife's filing of a proposed order on August 31, 2020, closely followed by Husband's filing of a proposed order received by the trial court on September 2, 2020. The trial court signed, dated, and entered Husband's "Final Order" on September 2, 2020, with no modifications. We note that the final order includes four statements to the effect that the order is the product of the trial court's "independent deliberation and decision."

In response to Wife's argument concerning this issue, Husband initially posits that the trial court in its final order made sufficient findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01, which provides in relevant part that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." The issue here, however, is not whether the final order contained sufficient findings of fact and conclusions of law but whether those findings and conclusions clearly represented the trial court's own analysis and deliberations. Husband then argues that Wife waived this issue by filing her own proposed order first and by subsequently failing to file a "Rule 52 motion to make additional findings of fact" or a Tennessee Rule of Civil Procedure 59 motion to alter or amend the judgment. Wife counters that an issue questioning whether an order represents a trial court's independent judgment cannot be waived. We agree with Wife on this point.

As Wife points out, this Court recently rejected a similar waiver argument in *Vaughn v. DMC-Memphis, LLC*, stating that "we have often considered this issue in the absence of the argument being raised in the trial court." No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *6 (Tenn. Ct. App. Jan. 27, 2021) (citing as examples *Regions Commercial Equip. Fin., LLC v. Richards Aviation Inc.*, No. W2018-00033-COA-R3-CV, 2019 WL 1949633, at *8 (Tenn. Ct. App. Apr. 30, 2019); *Bertuccelli v. Haehner*, No. E2017-02068-COA-R3-CV, 2018 WL 6199229, at *3 (Tenn. Ct. App. Nov. 28, 2018); *Koczera v. Steele*, No. E2015-02508-COA-R3-CV, 2017 WL 1534962, at *7 (Tenn. Ct. App. Apr. 28, 2017)).[1] Similarly, in *Highland Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 283 (Tenn. Ct. App. 2020), the plaintiff argued that the defendant had waived an issue concerning whether the trial court had entered a partial summary judgment order with substantially the same findings of fact and conclusions of law as in the plaintiff's proposed findings and conclusions when the defendant had raised the issue only in a motion for extraordinary appeal. This Court determined the plaintiff's "waiver argument to be unavailing" in part because it was unsupported by any authority. *Id.*

Here, Husband essentially asks this Court to create a new tenet that an issue regarding a trial court's verbatim adoption of a party-prepared order cannot be presented on appeal unless it was first raised before the trial court in a Rule 52 or Rule 59 motion. This we decline to do. *See generally Smith*, 439 S.W.3d at 312 ("Because making these decisions is a 'high judicial function,' a court's decisions must be, and must appear to be, the result of the exercise of the trial court's own judgment.") (internal citations omitted).

In support of her argument that the trial court's final order should be vacated and remanded for the trial court to "fashion [its] own findings and conclusions," Wife relies in part on this Court's decision in *Cunningham*. In determining that the final order in *Cunningham*, which had been entered following a bench trial in a probate action, should be vacated, this Court stated in relevant part:

> [T]he transcript of evidence approved by the trial court reflects that the court made no oral rulings at the conclusion of the February 12, 2019 trial but instead took the matter under advisement, directing each party to submit proposed findings of fact and conclusions of law. The record is devoid of any direction provided to the parties by the trial court as to drafting their proposed findings of fact and conclusions of law. In its May 7, 2019 order,

---

[1] In *Vaughn*, this Court proceeded to consider the merits of the appellant's claim upon concluding that neither the appellant's "brief nor the materials that are included in the record create doubt that the written order is both an accurate reflection of the trial court's order and a product of its independent judgment." *Vaughn*, 2021 WL 274761, at *6.

the trial court subsequently adopted nearly verbatim Executor's proposed findings of fact and conclusions of law.

* * *

Based upon the record before us, we cannot determine that Executor's proposed findings of fact and conclusions of law, adopted nearly verbatim by the trial court, represent the trial court's own independent analysis and judgment.

*Cunningham*, 2020 WL 2764412, at *4-5.

In the instant action, the trial court also provided the parties with no direction at the close of trial regarding its decision as to the issues on remand and took the matter under advisement. Although the court appeared to state that it would render a ruling "within ten days," it is undisputed that no ruling was forthcoming until the trial court rejected Wife's proposed order and adopted Husband's proposed order, which the court entered on the day it had been received by the court. Several statements were included in the final order to the effect that the order was the result of the trial court's "independent deliberation and decision." Although we respect the trial court's endorsement of these statements, inasmuch as these statements were included in Husband's proposed order and the trial court adopted the proposed order verbatim, we conclude that the inclusion of these statements does not assuage all doubt created by the record as to whether the final order was indeed the product of the trial court's independent analysis and deliberations. *See, e.g.*, *Mitchell v. Mitchell*, No. E2017-00100-COA-R3-CV, 2019 WL 81594, at *6-7 (Tenn. Ct. App. Jan. 3, 2019) (determining, despite the inclusion of language in the party-prepared order that the trial court had reviewed all portions of the record and applicable authorities, that "the trial court's verbatim adoption of Wife's findings of fact and conclusions of law without any oral ruling or direction from the trial court raises the appearance that the court merely chose 'between two provided options rather than fashioning a considered, independent ruling'") (quoting *Smith*, 439 S.W.3d at 315)). We therefore determine that the record in this case creates some "doubt that the decision represents the trial court's own deliberations and decision." *See Smith*, 439 S.W.3d at 316.

However, given the totality of the circumstances in this case, we find this Court's exercise of its discretion in *Highland Physicians*, 625 S.W.3d at 283, and *Huggins v. McKee*, 500 S.W.3d 360, 366 (Tenn. Ct. App. 2016), to be instructive. In *Highland Physicians*, this Court, faced with a situation in which the trial court had entered a partial summary judgment order adopting a party's proposed findings of fact and conclusions of law "almost verbatim," determined the circumstances to be distinguishable from those in

*Smith* because the trial court had not yet determined which party would prevail and more particularly because the order had "merely narrowed the issues for trial rather than concluding the proceedings." *Highland Physicians*, 625 S.W.3d at 283. Declining to vacate the partial summary judgment order, this Court concluded in this regard:

> [H]ere, we determine that the trial court's summary judgment procedure, although not ideal, does not require that the summary judgment order be vacated. We conclude that the circumstances of the case at bar are distinguishable from those found in *Smith* and its progeny. We further conclude that this case, which has been pending for several years and during which the parties have had the benefit of a lengthy jury trial, thousands of pages of pleadings filed, and a prior appeal, presents a proper case for this Court to exercise its discretion to consider the merits of the issues on appeal.

*Id.* at 284. We recognize that unlike the order at issue in *Highland Physicians*, the trial court's order at issue here is a final one, concluding the proceedings. However, this case also has been pending for several years, and the parties have had the benefit of a full bench trial, a prior appeal, and an evidentiary hearing on remand.

In *Huggins*, the matter was before this Court for the third time on appeal. *Huggins*, 500 S.W.3d at 362 (hereinafter, "*Huggins III*"). *See Huggins v. McKee*, 403 S.W.3d 781, 788 (Tenn. Ct. App. 2012) ("*Huggins I*") (affirming the dismissal of all claims against one defendant while reversing the dismissal of the plaintiff's claims against the other defendant); *Huggins v. McKee*, No. E2014-00726-COA-R3-CV, 2015 WL 866437 (Tenn. Ct. App. Feb. 27, 2015) ("*Huggins II*") (vacating the trial court's order dismissing the claims of the appellant, who was the substitute plaintiff, upon determining that the trial court had failed to explain its rationale for finding the claims to be moot). In *Huggins III*, the appellant argued that on remand following this Court's vacation of the trial court's order in *Huggins II*, the trial court had erred by entering an order granting summary judgment to the defendant appellee "without expressing its independent legal reasoning, in violation of the Tennessee Supreme Court's ruling in *Smith*." *Huggins III*, 500 S.W.3d at 365. The trial court had not rendered an oral ruling at the close of the summary judgment hearing and had taken the matter under advisement. *Id.* at 366. The appellee had then filed proposed findings of fact and conclusions of law, and the appellant had filed his own proposed order two weeks later. *Id.* Two days after the appellant's filing of a proposed order, the trial court had sent an email to the appellee's counsel, asking counsel to draft an order granting summary judgment to the appellee, "'incorporating [the appellee's] findings and conclusions[.]'" *Id.*

- 15 -

Considering the appellant's argument on appeal in *Huggins III* that the record did not support a determination that the trial court's order was "the product of the trial court's own independent legal reasoning and judgment," this Court concluded:

> We agree that the trial court's practice in this case is not fully compliant with either the letter or the spirit of *Smith*. To be sure, the better practice would have been for the trial court to either make an oral ruling or to draft its own order rather than adopting verbatim the proposed findings and conclusions of [the appellee]. We also realize, however, that this case has been awaiting resolution for nearly a decade and was previously remanded to the trial court because the trial court failed to offer an appropriate basis for its prior dismissal. As the *Smith* Court explained, "judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 [i.e., "conduct[ing] archeological digs" to discern the basis for the trial court's judgment] in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision." [439 S.W.3d] at 314. Additionally, under similar circumstances, this Court has held that in the absence of evidence to the contrary, this Court will "assume that the order approved and entered by the trial court accurately represents the court's reasoning." *In re Estate of Kysor*, No. E2014-02143-COA-R3-CV, 2015 WL 9465332, at *6 (Tenn. Ct. App. Dec. 28, 2015) (citing only pre-*Smith* cases to support this ruling). In the interest of providing the parties to this case a final resolution of the issues, we exercise our discretion to proceed to consider the merits of this appeal, but we caution litigants and trial courts that we may not choose to do so under similar circumstances in the future.

*Id.* at 366-67.

As in *Huggins III*, we agree with Wife that the trial court's practice in this instance was "not fully compliant with either the letter or the spirit of *Smith*." *See id.* at 366. However, we are also somewhat persuaded by Husband's request that "[f]or the sake of judicial economy and the finality for these parties," this matter not be remanded for entry of a judgment more clearly reflecting the trial court's independent deliberations. As Husband notes, this divorce has been pending for nearly seven years and has been previously remanded for the trial court to make specific findings of fact regarding, *inter alia*, the values of individual assets, the basis for determining that Wife's partnership interest in Pioneer Properties was marital property, and the equitable distribution of the marital estate. Additionally, during oral argument in the instant appeal, Wife's counsel stated that he would rely solely on the briefs concerning this issue and acknowledged that

Wife "really [did not] want this case remanded." Therefore, as in *Huggins III*, we exercise our discretion to consider the merits of this appeal "[i]n the interest of providing the parties to this case a final resolution" while also cautioning litigants and trial courts that this Court "may not choose to do so under similar circumstances in the future." *See id.* at 366-67.

## V. Classification of Partnership Interest in Pioneer Properties

Wife asserts that the trial court erred by classifying her partnership interest in Pioneer Properties as marital property. She acknowledges that the fact that she obtained the partnership interest during the course of the marriage creates a statutory presumption that the interest is marital property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A)(2021). However, she argues that she carried her burden to rebut the presumption by presenting her testimony and the testimonies of her mother and brother to the effect that the interest was a gift. Wife also argues that the trial court erred by finding that any appreciation in value of the asset was marital and by finding that the doctrines of transmutation and commingling applied. Husband asserts that Wife did not meet her burden of rebutting the statutory presumption because she failed to prove that the partnership interest was a gift. Husband also argues that the trial court correctly found that appreciation in the partnership interest's value was marital because he had made substantial contributions to the value of Pioneer Properties. Husband further argues that the doctrines of transmutation and commingling applied. Upon thorough review of the record and applicable authorities, we determine that the evidence does not preponderate against the trial court's classification of the partnership interest in Pioneer Properties as marital property because Wife obtained the partnership interest during the parties' marriage and failed to rebut the statutory presumption.

Regarding classification of property pursuant to divorce, this Court has previously elucidated:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

- 17 -

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at \*3 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted).  Issues regarding the classification of assets present questions of fact.  *See Stratienko*, 529 S.W.3d at 398-99.  Our review of the trial court's ruling regarding a question of fact is *de novo* with a presumption of correctness.  *See* Tenn. R. App. P. 13(d); *Burress v. Shelby Cty.*, 74 S.W.3d 844, 846 (Tenn. Ct. App. 2001).

Concerning the definition of "marital property," Tennessee Code Annotated § 36-4-121(b)(1)(A) provides in pertinent part:

> "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

Additionally, the version of Tennessee Code Annotated § 36-4-121(b)(1)(B) (2014) in effect when the instant complaint was filed provided in relevant part that marital property "includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation."[2]

In contrast, "separate property" is defined as:

(A)     All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;

(B)     Property acquired in exchange for property acquired before the marriage;

---

[2] Effective April 20, 2015, the General Assembly amended Tennessee Code Annotated § 36-4-121(b)(1)(B) to add additional examples of marital property not pertinent here, resulting in the recodification of the language quoted above as § 36-4-121(b)(1)(B)(i).  *See* 2015 Tenn. Pub. Acts, Ch. 202, § 1 (S.B. 161).

(C)     Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)     <u>Property acquired by a spouse at any time by gift, bequest, devise or descent;</u>

(E)     Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F)     Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (2021) (emphasis added).

It is well settled that assets acquired during a marriage are presumed to be marital property and that a party desirous of disputing this classification has the burden of proving by a preponderance of the evidence that the asset is separate property. *See Owens v. Owens,* 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). This presumption can be rebutted, however, by evidence of circumstances or communications clearly indicating an intent that the property remain separate. *See Batson v. Batson,* 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988); *see also Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998) ("Despite the fact that certain property may have been acquired during the marriage, a party may rebut any presumption that the property is marital by demonstrating that the property actually was a gift to that spouse alone.").

Concerning the partnership interest in Pioneer Properties, this Court directed the trial court on remand to make specific findings regarding whether "(1) the interest was a separate gift to wife, (2) husband made a substantial contribution to the preservation and appreciation of the asset, and (3) the doctrines of commingling and/or transmutation apply." *Long I*, 2019 WL 3986281, at *6. In determining that the partnership interest was marital property, the trial court stated in its final order:

The Court finds that ownership of Pioneer Properties and its status as separate or marital was a significantly disputed issue both in the original trial, on appeal, and as a large focus of the new evidence and testimony submitted on remand. Husband testified during the original trial and reaffirmed on remand and [in] additional testimony that he had made significant contributions to Pioneer Properties during the course of the marriage, including helping to establish values from various properties, evaluating property of members for consider[ation], and performing

activities for the upkeep of property owned by Pioneer Properties. Wife testified that Wife's parents were the originators of Pioneer Properties and gifted interest in the entity to their children, including the Wife, and that Husband did not substantially contribute to the value.

The Court further notes Wife's admission that distributions from Pioneer Properties, over $70,000, were deposited into a joint bank account. Wife admits that these distributions were marital, claiming that they were a gift to the marriage. Wife did not produce evidence of payment of gift taxes or gift tax returns concerning the supposed gift by Wife's parents, and both Wife's mother [L.W] or brother [S.R.] had no information in response to Husband's questions concerning gift taxes or gift tax returns. The absence of such evidence along with Wife's evasive responses to questions by Husband's counsel, the Court finds significant in connection with Wife's burden of proving that this asset indisputably acquired during the marriage was separate rather than marital. The Court finds that Wife's admitted treatment of the distributions as marital assets, supports Husband's credible testimony that the asset itself was a joint asset, and the Court further finds Wife's testimony lacks credibility.

The Court finds that Wife acquired the interest in Pioneer Properties during the marriage, and the Court notes the initial presumption that this asset is marital property. The Court further credits Husband's testimony that he made significant contributions to Pioneer Properties during the course of the marriage, and finds this testimony credible. The Court finds that Wife's testimony is less credible, and does not accept Wife's testimony that the property was a gift to her alone, and further that the other factors including Husband's contributions separately preponderate in favor of a finding that this asset is marital property. For either of these reasons, the Court finds that Wife has not carried her burden of proving by the preponderance of the evidence that this asset is separate property. The Court further makes the alternative finding that transmutation and commingling would apply, even if the asset had been separate, based on Wife's affirmative acts to join the Husband in the business, to involve him and his substantial contributions to the business, and to share in the distributions, to the joint account, all as a marital asset. The Court therefore finds that Pioneer Properties is marital property, subject to division by the Court.

Wife asserts that the trial court's analysis was "flawed" in part because "[w]hether Husband contributed to the business and whether the distributions from the business were

put into a joint bank account are completely separate issues from whether Wife has met her burden in proving the business is her separate property." To the extent that Wife is arguing that Husband's subsequent contributions to the value of Pioneer Properties and Wife's deposit of distributions in a joint marital account should not affect an analysis of whether the partnership interest was originally a gift to Wife, we agree. We also confirm this Court's previous determination in *Long I* that Wife's deposits over time into a joint marital account of the $71,000.00 she had received in distributions from Pioneer Properties would not, "in and of itself," have "transmute[d] the corpus of the asset into marital property" because the distributions always remained separate from the partnership interest itself. *See Long I*, 2019 WL 3986281, at *5 (citing *Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370, at *11 (Tenn. Ct. App. June 28, 2013); *Luttrell v. Lutrell*, No. W2012-02279-COA-R3-CV, 2014 WL 298845, at *5 (Tenn. Ct. App. Jan. 28, 2014)).

In *Long I*, this Court noted that in the original judgment then appealed from, the trial court had not made a finding "regarding whether wife met her burden to prove [the partnership interest] was a gift." *Long I*, 2019 WL 3986281, at *3. Inasmuch as "[s]everal possible inferences could be drawn from the trial court's order" finding that the partnership interest was marital property, this Court directed the trial court on remand to make specific findings of fact concerning whether the interest was a gift, whether Husband had contributed to the appreciation of the partnership interest, and whether the doctrines of commingling and transmutation would apply in this case to convert a separate property interest into a marital one. *Id.* at *3-6.

However, upon the trial court's determination on remand that Wife had failed to prove that the Pioneer Properties partnership was a gift, pursuant to Tennessee Code Annotated § 36-4-121(b)(2)(D), the trial court essentially found that Wife had failed to rebut the statutory presumption of marital property acquired during the marriage, meaning that the Pioneer Properties partnership interest had never been Wife's separate property. Therefore, upon affirmation of this finding, any further analysis as to Husband's contributions to the preservation and appreciation of the partnership interest would be relevant only as to the equitable distribution of the marital estate, which we will address in a subsequent section of this Opinion. *See* Tenn. Code Ann. § 36-4-121(c).

Furthermore, any analysis of the doctrines of commingling and transmutation would be moot because such doctrines operate to transform separate property into marital. *See Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) ("In addition to the provisions of Tenn. Code Ann. § 36-4-121(b)(1)(b), courts in Tennessee have recognized two methods by which separate property may be converted into marital

property: commingling and transmutation.").[3] As Wife indicates in subheadings within the argument section of her principal brief, questions of whether Husband made substantial contributions and whether the doctrines of commingling and transmutation should apply are only pertinent "[i]f this Court concludes that Wife did meet her burden" to prove that the partnership interest was a gift.

Concerning whether the partnership interest was a gift, we address at the outset a question raised by Husband as to the proper standard of review. Husband asserts that unlike other factual findings relative to classification of marital and separate property, Wife was required to prove by clear and convincing evidence that the partnership interest was an individual gift to her. Wife maintains that proof of a gift in the context of a divorce must only be proven by a preponderance of the evidence. Upon careful review of the applicable authorities, we agree with Husband to the extent that the elements required to prove that property was a gift must be established by clear and convincing evidence. *See Trezevant v. Trezevant*, 568 S.W.3d 595, 615 (Tenn. Ct. App. 2018) ("The party asserting that they acquired the property by gift has the burden of proving the essential elements of a gift by clear and convincing evidence[.]"). We note, however, that the trial court's ultimate "classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if <u>the evidence preponderates against the court's decision</u>." *See id.* at 607 (quoting *Dunlap*, 996 S.W.2d at 814) (emphasis added).

"A gift is a 'voluntary transfer of property to another made gratuitously and without consideration.'" *Dunlap*, 996 S.W.2d at 816 (quoting BLACK'S LAW DICTIONARY 619 (5th ed. 1979) (emphasis in *Dunlap* omitted). In *Trezevant*, a divorce case, this Court explained the requirements for a party to prove that property was acquired as a gift as follows:

> The party asserting that they acquired the property by gift has the burden of proving the essential elements of a gift by clear and convincing evidence: (1) "the intention by the donor to make a present gift," and (2) "the delivery of the subject gift by which complete dominion and control of the property

---

[3] As our Supreme Court explained in *Langschmidt*:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.

81 S.W.3d at 747 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)) (other internal citations omitted).

[was] surrendered by the donor." *See Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1997); *Brewer v. Brewer,* No. M2010-00768-COA-R3-CV, 2011 WL 532267 at *3 (Tenn. Ct. App. Feb. 14, 2011).

*Trezevant*, 568 S.W.3d at 615. Although a guiding principle is that the testimony of a beneficiary is insufficient to establish an *inter vivos* gift, *see Harris v. Taylor*, No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *4 (Tenn. Ct. App. Mar. 28, 2006), "'[i]ntent is determined from the totality of the circumstances,'" *see Trezevant*, 568 S.W.3d at 615 (quoting *Harris*, 2006 WL 772007, at *4).

Wife argues that testimony presented in this matter was sufficient to prove that her partnership interest in Pioneer Properties had been a gift to her and therefore her separate property. In *Long I*, this Court noted that Wife had testified during trial "that her interest in Pioneer Properties was a gift from her family to her alone, and that it was always intended to be separate." *Long I*, 2019 WL 3986281, at *3. On remand, the trial court expressly found that Wife's testimony, which she reiterated during the remand hearing, was "less credible" than Husband's when she maintained that her interest in Pioneer Properties was separate property because it constituted an individual gift from her parents in 1993. Husband argued in *Long I* "that [W]ife did not meet her burden in establishing it was a gift, because she presented 'no other supporting documentation' and 'no corroborating witnesses.'" *Id.*

In response, Wife presented testimony on remand from her mother (L.W.), who maintained that the partnership interest was intended as a gift to Wife individually from her parents and that for that reason, L.W. and her husband never included any of their children's spouses in Pioneer Properties or in meetings concerning the business. Wife also presented testimony from her brother (S.R.), who when questioned regarding how Pioneer Properties originated, stated: "My dad put it together for our family trust." The trial court found it significant, however, that L.W. and S.R. "had no information in response to Husband's questions concerning gift taxes or gift tax returns." When questioned regarding whether she and her husband had ever declared having given gifts of partnership interest on their income tax returns, L.W. stated: "I have no idea. I don't remember back that many years."

Wife acknowledges that she did not present any other proof, apart from her testimony and that of L.W. and S.R., that her partnership interest was a gift from her parents. During trial, Wife did present the original partnership agreement, dated April 13, 1993, reflecting that it was an agreement among six partners, who were identified by name in the agreement and whom Wife explained were her stepfather, brother, sister, two stepbrothers, and herself. We note that although L.W. testified that Wife's partnership interest was a gift to Wife from L.W. and her husband (Wife's stepfather), L.W. was not

actually a party to the 1993 partnership agreement. Wife testified that the partnership agreement was revised in 2002 after her stepfather died and S.R. had sold his interest. According to Wife, the partners in the revised 2002 agreement were Wife, L.W., Wife's sister, and Wife's two stepbrothers. Wife subsequently testified that at the time of trial, Pioneer Properties had three partners: Wife, L.W., and Wife's sister.

In the 1993 agreement, a section entitled "Contribution of Partners" reads as follows:

> The partners herein own certain real and personal property that they wish to convey and contribute to the partnership. A complete list of all assets owned by the partnership as of the date of execution of this Agreement is attached hereto and made a part hereof as Exhibit "A" by reference.[4]

> All partners agree that each individual partner has contributed equal amounts of either labor, expertise, personal property, or real property to the partnership and that each partner's capital account is presently equal to all other partners capital account.

On its face, the 1993 partnership agreement reads as though each partner to Pioneer Properties, including Wife, "convey[ed] and contribute[d]" "certain real and personal property" upon execution of the agreement.

Although Wife's testimony and that of her mother and brother would indicate that Wife's stepfather was the only one of the original six partners to contribute property to the partnership, the language of the partnership agreement explicitly states otherwise. As such, the partnership agreement does not support a finding that Wife's interest in Pioneer Properties was a gift. *See, e.g.*, *Bewick v. Bewick*, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *8 (Tenn. Ct. App. Feb. 13, 2017) (determining that the husband had failed to establish that his ownership interest in a corporation was a gift from his father and stating: "[A]lthough Husband testified at trial that he did not pay anything for the interest he acquired in the Indiana LLC, we note that the company's Operating Agreement clearly states otherwise.").

In support of her argument that testimony alone should be sufficient to prove that the partnership interest was a gift, Wife relies on this Court's decision in *Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370 (Tenn. Ct. App. June 28, 2013). In *Telfer*, during the parties' marriage, the wife's father had "transfer[red] ownership of

---

[4] "Exhibit A" to the 1993 partnership agreement is not in the record and does not appear to have been included with the agreement when it was admitted as an exhibit at trial.

some of his assets to Wife through the creation of business entities, in order to avoid the payment of gift and inheritance taxes upon his death." *Telfer*, 2013 WL 3379370, at *1. Based primarily on testimony presented by the wife and her father, the *Telfer* trial court found that the wife's ownership interests in two companies had been gifts made to her individually from her father. *Id.* at *5. On appeal, the husband argued, *inter alia*, that the trial court had erred in this finding as to one of the two companies. *Id.* at *8. This Court affirmed the trial court's finding that the ownership interest in the company at issue was a gift to the wife from her father. *Id.*[5]

Although we recognize Wife's point that testimony may be sufficient to establish interest in a company as an individual gift, *see id.*, we find the situation in this case to be factually distinguishable from that in *Telfer*. Here, the trial court in its final order made an express credibility determination in declining to "accept Wife's testimony that the property was a gift to her alone." The trial court found that Wife's responses to questions concerning the Pioneer Properties partnership interest had been "evasive," and the court was troubled by the lack of information concerning "gift taxes or gift tax returns" in L.W.'s and S.R.'s respective testimonies. Emphasizing that the trial court's credibility determinations are afforded great deference on appeal, we discern no reason to disturb the trial court's findings in this regard. *See Keyt*, 244 S.W.3d at 327 ("[W]here issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings.").

We therefore determine that Wife's evidence offered in support of the Pioneer Properties interest as a gift was not clear and convincing. *See In re Bernard T.* 319 S.W.3d 586, 596 (Tenn. 2010) ("Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings.") (internal citations omitted). The trial court did not err in finding that Wife failed to carry her burden of proving that the partnership interest in Pioneer Properties was a gift to her alone.

Having determined that the evidence preponderates in favor of the trial court's finding that Wife failed to prove by clear and convincing evidence that the partnership interest in Pioneer Properties was an individual gift to her, we further determine that any additional analysis of whether the partnership interest could have been transformed from separate to marital property by Husband's contributions to Pioneer Properties or by operation of the doctrines of commingling or transmutation is pretermitted as moot. The

---

[5] This Court ultimately determined in *Telfer* that despite the ownership interest in one company having been an individual gift to the wife, it was marital property because the parties' marital funds had helped to preserve the company's assets when the parties had paid federal income taxes on the wife's interest without a corresponding distribution from the company to her. *Telfer*, 2013 WL 3379370, at *13.

trial court did not err in classifying Wife's partnership interest in Pioneer Properties as marital property.

## VI.  Equitable Distribution of Marital Estate

Wife contends that the trial court's distribution of the parties' marital property was inequitable because the court did not properly consider the statutory factors provided in Tennessee Code Annotated § 36-4-121(c).  Wife specifically argues that the trial court improperly considered her separate property under two different statutory factors. Although not directly addressing this specific argument, Husband contends that the trial court properly considered all of the factors and equitably distributed the marital property. Upon thorough review of the record in light of the statutory factors, we determine that the trial court properly considered the factors in fashioning what it found to be an equitable distribution of the marital property.

We note that although the values of some properties, including the Pioneer Properties partnership interest, the marital residence, Stonecrest, and Caney Fork, were disputed during the remand hearing, neither party has raised an issue on appeal concerning the trial court's valuation of any property.  In addition, the parties' respective Tennessee Court of Appeals Rule 7 charts reflect identical amounts for individual properties as valued by the trial court.  However, the parties differ in their mathematical calculations concerning the total of these values and the percentages distributed to each party by the trial court.  Upon review, we determine that Wife's calculations in her Rule 7 chart are mathematically correct.  She lists the trial court's value for the total marital property awarded to Husband as $734,500.00 and for the total marital property awarded to her as $757,027.59, yielding a percentage distribution of 51% to Wife and 49% to Husband.[6]  In addition, the trial court adopted an undisputed valuation of Wife's separate property, apart from the George Smith Road Property, in the total amount of $500,000.00.

The version of Tennessee Code Annotated § 36-4-121(c) (2014) in effect at the time the complaint in the instant action was filed provided:

(c)      In making equitable division of marital property, the court shall consider all relevant factors including:

(1)      The duration of the marriage;

_____

[6] In an apparent mathematical error, Husband calculates the trial court's valuation of the total marital property awarded to him as $732,000.00 and of the total marital property awarded to Wife as $787,000.00, which would have yielded a percentage distribution of 52% to Wife and 48% to Husband.

(2)     The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3)     The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)     The relative ability of each party for future acquisitions of capital assets and income;

(5)(A)  The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

   (B)  For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6)     The value of the separate property of each party;

(7)     The estate of each party at the time of the marriage;

(8)     The economic circumstances of each party at the time the division of property is to become effective;

(9)     The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)    The amount of social security benefits available to each spouse; and

(11)    Such other factors as are necessary to consider the equities between the parties.

In its final order, the trial court considered the statutory factors as they are provided in the current version of Tennessee Code Annotated § 36-4-121(c) (2021), rather than the version governing this action. However, because the only statutory factor added to the statute by a subsequent amendment was one the trial court found to be inapplicable to this case, the distinction is one involving the numbering of factors only and constitutes harmless error. Effective July 1, 2017, the General Assembly amended Tennessee Code Annotated § 36-4-121(c) by adding a new subdivision (10) addressing valuation of a "closely held business or similar asset" and renumbering the subsequent subdivisions. *See* 2017 Tenn. Pub. Acts, Ch. 309, § 1 (H.B. 348). The trial court's reference below to the inapplicability of factors (10) and (11) therefore refers to a factor (10) that was not in effect when the instant action was filed and a factor (11) that refers to the former factor (10) concerning social security benefits. We note that the record supports the trial court's findings that the parties did not present evidence regarding the tax consequences associated with the sales of specific assets (factor nine) or social security benefits available to each spouse (factor ten). *See* Tenn. Code Ann. § 36-4-121(c) (2014).

In distributing the marital property, the trial court set forth its consideration of the statutory factors as follows:

Tennessee Code Annotated § 36-4-121(c)(5) that both parties served as wage earners. Although the Wife did make more money than the Husband. It should be noted that the Husband pursued work in the ministry as well as his full-time work and had the Wife's blessing to do so.

Tennessee Code Annotated § 36-4-121(c)(6) the Wife has a separate interest in Pioneer Realty; RLW Partnership; and Robinson Family Properties LP, and the George Smith Road [property].

Tennessee Code Annotated § 36-4-121(c)(7) that the Wife owned a house on George Smith Road. That was the only testimony as to the estate at the time of the marriage.

Tennessee Code Annotated § 36-4-121(c)(8) at the time of division the wife is still working for her family business and will continue to do so. The husband is working for a factory in Crossville and that is very physical work.

The Court finds there was no significant testimony as to T.C.A. § 36-4-121(c)(9) & (10) & (11).

Tennessee Code Annotated § 36-4-121(c)(12) that the Court found separate property in this matter to be the George Smith Road house, which was awarded to the Wife; furthermore, the Wife's separate interest in Pioneer Realty, RLW Partnership and Robinson Family Properties LP, are valued at approximately five hundred thousand dollars ($500,000.00).

For the reasons previously stated, the Court finds and concludes that Pioneer Properties is a marital asset.

The Court further finds and concludes that Wife has substantial separate assets, and that Husband has less ability to accumulate assets based on his physically demanding work history.

(Paragraph lettering omitted.)

Although the trial court began its express consideration of statutory factors with factor (5), the court did make findings of fact concerning factors (1)-(4) in a preceding section of its final order that we deem to be supportive of the court's equitable distribution of the marital property. As to factor one, the court found that the parties had an "extremely long-term marriage." We agree, noting that even setting aside the parties' first marriage and considering only the second marriage through the date of the complaint's filing, the parties were married for twenty-seven years. Regarding the parties' relative age, health, employability, and financial needs (factor two), the trial court stated the following:

The Court finds that the parties have similar vocational skills as they have both been realtors; however, their work history is vastly different as the wife has primarily worked for the family business. The wife became a[] realtor in 1987 and later a broker. The husband became a[] realtor in 1993 and was active until 2014. The Husband also worked over the course of the marriage at Crossville Ceramics and Dana and Stonepeak Ceramics. The Court finds that though both Husband and Wife worked, Wife made more money over the course of the marriage. Husband, at the Wife's blessing, worked in ministry since 1987 with pastoring churches and also doing jail ministry and a printing ministry which he helps transport these books of the bible to different part[s] of the country for distribution. The husband has had other jobs that always made lower income than the Wife. Based on the

extremely lengthy marriage, where Wife routinely made more money than Husband, the Court finds that Husband is the disadvantaged spouse.

Wife has not raised an issue concerning the trial court's finding that Husband was the economically disadvantaged spouse, and the record supports this finding.

As to factor three, particularly the tangible or intangible contributions by one party to the increased earning power of the other, in its analysis of the Pioneer Properties partnership interest, the trial court found on remand that Husband had made substantial contributions to the appreciation of Pioneer Properties, which the parties do not dispute had increased in value significantly since its inception in 1993. Although Wife asserts that Husband's contributions were not significant, the trial court credited Husband's testimony, finding that he had contributed to Pioneer Properties by "helping to establish values from various properties, evaluating property of members for consider[ation], and performing activities for the upkeep of property owned by Pioneer Properties."

Wife presented a cancelled check reflecting that Husband had been paid $375.00 in November 2007 for mowing property owned by Pioneer Properties, and she asserts that Pioneer Properties could have hired anyone to perform many of the tasks performed by Husband. However, the fact remains that Husband performed these tasks, including offering his opinion as to the value of properties, often without compensation other than the increased value of the partnership interest. Additionally, factor four, the relative ability of each party to make future acquisitions, is implicated by the trial court's finding at the close of its analysis that "Wife has substantial separate assets, and that Husband has less ability to accumulate assets based on his physically demanding work history."

In considering the remaining applicable factors, the trial court emphasized the parties' relative contributions to the marriage as wage earners, the value of Wife's separate property, and the relative economic circumstances of the parties at the time of the final judgment. Wife argues that the trial court overemphasized the value of her separate property by considering it under factor six and also as an additional factor "necessary to consider the equities between the parties." *See* Tenn. Code Ann. § 36-4-121(c)(11)(2014). Wife offers no authority, and our research has revealed none, to support her contention that it is reversible error for the trial court to reconsider a factor already listed when considering "[s]uch other factors as are necessary to consider the equities between the parties." *See id.* Moreover, the balancing of statutory factors is not a mathematical equation but a wholistic analysis. As this Court has previously explained with regard to a trial court's distribution of marital property:

> The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn.

- 30 -

Code Ann. § 36-4-121(c) in light of the evidence that the parties have presented. *Flannary v. Flannary,* 121 S.W.3d [647,] 650-51 [(Tenn. 2003)]; *Tate v. Tate,* 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard,* 986 S.W.2d [220,] 230 [(Tenn. Ct. App. 1998)]. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly,* 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson,* 769 S.W.2d 849, 859. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton,* 182 S.W.3d [821,] 834 [(Tenn. Ct. App. Aug. 15, 2005)]. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly,* 130 S.W.3d at 785-86; *Gratton v. Gratton,* No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard,* 986 S.W.2d at 231.

*Owens*, 241 S.W.3d at 490. *See Manis*, 49 S.W.3d at 306 (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

In the case at bar, although the trial court's distribution of marital property is not exactly mathematically equal with a 51-49 ratio in Wife's favor, we determine that it is equitable based on consideration of the statutory factors. In response to Wife's argument, we do not find that the trial court overemphasized Wife's separate assets, especially when coupled with the trial court's finding that she had the greater ability to earn future income and acquire future assets. We determine that the manner in which the trial court weighed the factors contained in Tennessee Code Annotated § 36-4-121(c) was consistent with logic and reason and that the result to these parties was equitable. As such, we conclude that the trial court's distribution of marital property did not lack proper evidentiary support and did not result in an "'error of law or misapplication of statutory requirements and procedures.'" *See Keyt*, 244 S.W.3d at 327 (quoting *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). We therefore affirm the trial court's equitable distribution of marital property.

VII. Conclusion

- 31 -

For the foregoing reasons, we affirm the judgment of the trial court in its entirety. We remand this case for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, Carolyn Diane Long.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE